Henry W. COWLISHAW, Plaintiff,

v.

**ARMSTRONG RUBBER COMPANY,**
Defendant.

No. 76 C 884.

United States District Court,
E. D. New York.

Jan. 28, 1977.

Thomas J. Lilly, New York City (Doran, Colleran, O'Hara, Pollio & Dunne, New York City, of counsel), for plaintiff.

William J. Doyle, New Haven, Conn. (Brotman & Dolin, New York City, and Wiggin & Dana, New Haven, Conn., of counsel), for defendant.

### MEMORANDUM and ORDER

DOOLING, District Judge.

Plaintiff was born on June 19, 1912, and worked for defendant Armstrong Rubber Company from July 1962 or 1963 until he was involuntarily retired on July 1, 1974. At that time he was Metropolitan New

York distribution sales manager. Plaintiff contends that defendant forced his retirement solely because of his age in violation of the Federal Age Discrimination in Employment Act of 1967, 29 U.S.C. 621 et seq. Defendant answers that its action was not violative of the Act because it retired plaintiff, as permitted by Section 623(f)(2)of the Act, under the terms of a bona fide employee benefit plan, a retirement or pension plan. In addition defendant pleaded two affirmative defenses—

(1) that plaintiff failed to file with the Secretary of Labor a notice of his intention to file an action under Section 626(c) of the Act within one hundred eighty days after the allegedly unlawful practice occurred; and

(2) that under the provisions of Section 633(b) plaintiff may not institute a Section 626 suit before the expiration of sixty days after state proceedings have been commenced unless the state proceedings have been earlier terminated, and plaintiff did not, as is required by Section 626(d)(2) in cases within Section 633(b), give notice to the Secretary of his intention to sue within the earlier of (a) three hundred days after the allegedly unlawful practice occurred or (b) thirty days after he received notice of the termination of the state proceeding.

Plaintiff did not send a formal notice of intention to sue to the Secretary of Labor until April 4, 1975, a date more than one hundred eighty but less than three hundred days after the date the allegedly unlawful practice occurred; April 4, 1975, was also more than thirty days after plaintiff received his last communication from the Connecticut Commission on Human Rights and Opportunities.

Armstrong advised plaintiff in the period June 22–28, 1974, that his employment would be terminated on July 1, 1974. Although there was some discussion of an alternative arrangement, a distributorship of some sort, nothing was agreed on, and plaintiff was involuntarily retired effective July 1, 1974.

Plaintiff conceived himself aggrieved by the enforced retirement, and he went about the end of June 1974 to the Federal Department of Labor office in Hempstead. At that time he seems to have supplied the Department with a handwritten statement of grievance. On July 26, 1974, plaintiff filed a formal complaint with the Department of Labor charging discrimination because of age. He was told that his claim would be processed through the Department's Hartford office. The transfer to Hartford apparently was accomplished about August 4, 1974, and plaintiff received letters about his matter from several persons connected with the Department's Hartford office: from Arthur Lichtig, dated August 5, 1974; from John J. Reardon, dated August 19, 1974, and October 7, 1974, and March 21, 1975. Plaintiff wrote to Mr. Reardon at the Hartford office of the Department of Labor on September 24, 1974, and on January 10, 1975; and he wrote to Mr. Swirsky at the New Haven office of the Department on January 10, 1975. The Department of Labor evidently directed its efforts to trying to encourage reinstatement or a compromise arrangement. Not, however, until a letter of October 7, 1974, did it recommend to plaintiff that he file a complaint with the Connecticut Human Rights and Opportunities Commission.

Plaintiff prepared a complaint to the Connecticut Commission dated October 15, 1974, which the Commission stated that it did not receive until November 12, 1974. By letter of November 18, 1974, a supervisor of the Commission advised plaintiff that the Connecticut law does not apply to terminations of employment in which the employee is entitled to benefits under a bona fide retirement or pension plan, that if he was so entitled the Commission could not effectively handle a complaint, that plaintiff's termination occurred more than 90 days before he contacted the Commission, and that the complaint fell outside the period in which the Commission could take complaints. Plaintiff, by letter dated December 11, 1974, vigorously protested the rejection of his claim. Plaintiff then, about December 20, 1974, spoke to a Mr. Johnson

of the Department of Labor of the State of New York, or some other state agency, and was told to await the outcome of his federal application. Shortly afterward, by letter dated January 3, 1975, the Connecticut Commission advised plaintiff that his December letter had been post-marked January 1st and had been received January 3rd, 1975, and that it was correct that his complaint could not be taken because it was presented beyond the 90 day statute of limitations.

The Federal Department of Labor, through Compliance Officer Sam Swirsky, evidently continued efforts on plaintiff's behalf and, before completing the efforts, advised plaintiff by letter of March 21, 1975, that, as there might be delay in pursuing the settlement efforts with defendant, it was

". . . compelled to advise you that if you wish to institute a private action under the Age Discrimination in Employment Act you must, or through counsel, submit to our office a 'notice of intent to sue' addressed to the Secretary of Labor. This must be done within 300 days of the alleged unlawful practice. From the information we have in hand it would appear that as of July 1, 1974, the 300 days commenced running."

Plaintiff sent a Notice of Intention to Sue to the Secretary of Labor under date of April 4, 1975, by registered mail. The present action was commenced on May 13, 1976, within two years after the allegedly unlawful practice. 29 U.S.C. 626(e), 255.

Defendant's argument is direct and clearcut: sixty days notice must be given to the Secretary before the grievant may start an action; such notice must be given either (1) within 180 days after the allegedly unlawful practice occurred, or (2) if the state has an age discrimination law, then either within 300 days after the alleged unlawful practice occurred or within 30 days after the grievant receives notice of the termination of the state proceeding, whichever is earlier. Section 633(b) may seem inferentially to require that the grievant initiate a state proceeding where state law permits it. See

*Dubois v. Packard Bell Corp.*, 10th Cir. 1972, 470 F.2d 973, interpreting 42 U.S.C. 2000e–5(c), (d), (e). But *cf. Bertrand v. Orkin Exterminating Co.*, 419 F.Supp. 1123, N.D. Ill.1976. Plaintiff, it is contended, did not meet the statutory time requirements because, if belatedly, he did commence a state proceeding, and he thereafter failed to serve notice of intention to sue within 30 days after he learned of the termination of the state proceeding.

Section 626(d) appears literally to produce the result for which defendant contends. (Section 633(b) adds the parallel requirement that the grievant not sue before 60 days after initiating a state proceeding unless that proceeding ends before the 60 days expire. That limitation would operate within the time strictures imposed by Section 626(d).)

Plaintiff here diligently pressed his claim both with the Federal Department of Labor and with defendant. But his failure to pursue his state remedy in a timely way, it is argued, deprives him of all right to relief. Federal deference to the state's remedial process thus ends, defendant contends, in a total loss of right. Such consequences are happily, not frequent in the law, and it would be well to be very certain that the statutes require it.

The statutes state and federal, create in individuals an important and new substantive right. Deference to state implementation of the state created right is not the dominant. The dominant is the creation of the new right and providing for its effective enforcement. The procedural implementation provided in the statute becomes a cheat unless it is read as directed to securing their substantive right to discharged employees. No defensive interest of the nation or of the state is sought to be protected by the time provisions of the statute. They exist solely to give the federal government, or in some cases that state government, the opportunity to eliminate the accused practice (29 U.S.C. 626(b), (d) ), to commence an action on behalf of the aggrieved employee or employees (29 U.S.C. 216(c), 626(b), (c) ), and to decide whether to

permit the grievant to institute his own private action.

Clearly the cases have held that the right is lost if the discharged employee does not in some sense and form "file" a notice of intention to sue within one hundred eighty days after the unlawful practice occurred. *Powell v. Southwestern Bell Telephone Co.,* 5th Cir. 1974, 494 F. 2d 485, now a leading case, took the view that complaining to the Federal Department of Labor was not enough; that, at least where the Department timely drew the grievant's attention to the specific time limits involved, the grievant was required to file a distinct notice of her intention to sue. A request to the Secretary to sue in the grievant's behalf was not considered to be an equivalent of a notice to sue. The Court observed that the two and three year statute of limitations invoked through Section 626(e) from 29 U.S.C. 255 served a different purpose: the grievant had not only to file the notice of intention to sue within 180 days, he had also to sue within the limitary period of 29 U.S.C. 255. *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.,* 5th Cir. 1975, 515 F.2d 1195, reiterated the conclusion in *Powell,* and it added the holding that the employer's failure to have posted the notice of rights required by Section 627 did not excuse the grievant's delay nor toll the 180 day limitation. *Cf. Blau v. Albert,* S.D.N.Y. 1957, 157 F.Supp. 816, 818. *Hiscott v. General Electric Co.,* 6th Cir. 1975, 521 F.2d 632, like *Powell,* held that furnishing information to the Department of Labor was not giving the required notice to sue, held, like *Edwards,* that the employer's failure to post the notice of rights required by Section 627 did not toll or excuse, doubted that the 180 day period could be delayed in commencing to run until the employee learned of his statutory rights, and rejected the contention that involuntary retirement could be considered a continuing wrong so far as concerns tolling the 180 day limitation. *Ott v. Midland-Ross Corp.,* 6th Cir. 1975, 523 F.2d 1367, held that the statute of limitations incorporated by Section 626(e) from 29 U.S.C. 255 could not be asserted by a defendant employer if the employee showed that the employer fraudulently induced the employee to forego his statutory right to sue; in *Ott* plaintiff had filed a timely notice of intention to sue with the Department of Labor.

*Goger v. H. K. Porter Co.,* 3rd Cir. 1974, 492 F.2d 13, read Section 633(b) of the Act as requiring the grievant to resort to the state remedy before attempting to sue under Section 626(c). The majority of the Court reasoned that, although the Act does not require the grievant to exhaust his state remedy [see Sections 626(d), (2), (e), 633(b) (60 day waiting period)], the grievant was, strictly, required to show that an appeal had first been made to the state for relief in order to make out a federal claim. The Court found, however, that in the case before it resort to the state agency was excused because Section 633(b) had not been judicially interpreted at the time the employee had to act. One judge, concurring in the result, argued, as had the Secretary of Labor, that the grievant was not required first to appeal to the state authority, and that the sixty day waiting period of Section 633(b) applied only if the grievant elected to appeal to the state authority. *McGarvey v. Merck & Co.,* 3rd Cir. 1974, unreported, 493 F.2d 1401, adhered to the *Goger* interpretation of Section 633(b), but indicated that resort to the state remedy would be excused if, although it was too late to initiate state proceedings, it also appeared that a state official had advised the grievant to file his complaint with the Federal Department of Labor.

*Dartt v. Shell Oil Co.,* 10th Cir. 1976, 539 F.2d 1256, followed the *Powell* line of cases in concluding that the filing of a notice of intention to sue was an indispensable item of proof, but, in partial reliance on *Sanchez v. TWA,* 10th Cir. 1974, 499 F.2d 1107 (the correctness of which on its facts is shaken by the elaborate dictum in *International Union v. Robbins & Myers, Inc.,* 1976, —— U.S. ——, 97 S.Ct. 441, 50 L.Ed.2d 427), the Court held that the 180 day filing time was tolled by the *de facto* fulfillment of the main purposes of the Act: plaintiff pursued her case diligently with the Department of

Labor, the Department promptly got in touch with employer, the Department of Labor did not notify plaintiff of her need to file a Notice of Intention to sue until after 180 days had passed, plaintiff promptly thereafter filed the notice of intention, and the employer's slowness in complying with the Department's requests for data had protracted the Department's conciliation effort. The Court noted also that the notice of rights form furnished by the Department to the employer for posting to comply with Section 627 did not explain that the grievant was required to file a timely notice of intention to sue.

The District Court cases are not in harmony. In *Vaughn v. Chrysler Corp.,* E.D. Mich.1974, 382 F.Supp. 143, the Court held, following the reasoning of *Goger,* that plaintiff had to show that he had pursued his state remedy in the absence of a showing of justifiable and detrimental reliance upon official advice in failing to pursue the state remedy. The Court also held that plaintiffs were barred by their failure to give the Secretary sixty days notice of their intention to sue. *Burgett v. Cudahy Co.,* D.Kan.1973, 361 F.Supp. 617, in a quasi-class action, in effect held that the sending of a timely notice of intention to sue, which named one grievant and referred to "the other three gentlemen" released at the same time as the named grievant, was a sufficient notice as to all four employees, at least for the purpose of litigating the issues typically raised by the named grievant's case. *Bishop v. Jelleff Associates,* D.C.1974, 398 F.Supp. 579, 593, excused compliance with Section 626(d) on the ground of the relative newness of the Act, the plaintiff's want of sophistication, the defendant's failure to post the notice of rights required by Section 627, and the plaintiff's oral representations to the Department of Labor that defendant was terminating large numbers of elderly employees. *Woodford v. Kinney Shoe Corp.,* N.D.Ga.1973, 369 F.Supp. 911, held that Section 626(d) did not, by requiring that the notice of intention to sue be "filed," signify that the notice had to be written, nor did it have to be explicit and use the words of the statute. The Court

thought it enough if within 180 days after his discharge the grievant reports to the Department that he has been discharged from his job because his employer discriminates against older workers, even if the grievant does not in so many words declare to the Department his intention of filing suit. One of the plaintiffs in *Woodford* had only telephoned her complaint to the Department 160 days after her discharge, claiming that she had been displaced by a young man. She was told that she did not need to visit the Department of Labor office, that her complaint was timely and that the Department had sixty days to attempt to resolve the dispute. *Skoglund v. Singer Co.,* D.N.H.1975, 403 F.Supp. 797, dealt with a failure to proceed under the state procedure coupled with a failure to give timely notice of intention to sue to the Department of Labor. The Court concluded that neither Section 633(b) nor Section 626(d)(1) imposed a "jurisdictional" limitation, and that if plaintiff could prove that the employer had not posted the notice of employee rights, as required by Section 627, the belatedness of plaintiff's notice could be excused, and that the employee's complaint would not be dismissed for failure to pursue the state remedy, at least where it was still possible that the state would retain the case for consideration. *Vasquez v. Eastern Air Lines,* D.P.R.1975, 405 F.Supp. 1353, held that the plaintiff did not have to show timely pursuit of the "state" remedy where it was not of the kind contemplated by the federal statute. *Magalotti v. Ford Motor Co.,* 418 F.Supp. 430, E.D.Mich.1976, held that where the employee, when he first approached the state agency, was—properly—advised that he was late and that his claim would not be accepted, the employee would be treated as having "commenced" a state proceeding within the meaning of Section 633(d), and that the employee's notice of intention to sue was valid even though given before he approached the state agency. The Court considered that the risk that its decision would encourage calculated avoidance of state proceedings in favor of federal proceedings was outweighed by the

considerations that the statute plainly does not require exhaustion of the state remedy and that even a timely state proceeding could be voluntarily aborted without difficulty. *Bertrand v. Orkin Exterminating Co.*, 419 F.Supp. 1123, N.D.Ill.1976, took the view that resort to the Illinois state agency was excused because the state procedure was not one of the kind that was in the contemplation of the federal statute.

There is some basis for the view that Section 633(b) "has proved more successful as a trap to the unwary litigant than as a gesture of respect towards state remedies" —to use the language of the Court in *Bertrand*. With the lead given in the direction of accepting informal compliance by *Love v. The Pullman Co.*, 1972, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679, a case under Title VII (42 U.S.C. 2000e *et seq.*) it is difficult to understand the tendency to insist on a notice of intention to sue that is formally different from and additional to a charge of discriminatory discharge. And the insistence on resort to the state remedy is hard to square with the subordinate role of the state function. The Secretary has the power to investigate, and to sue not only to obtain equitable relief but also to vindicate the rights of individual employees to damages. Any action that the Secretary takes not only supersedes an employee's individual suit (Section 626(c)) but also supersedes any action of any state agency that performs functions like those of the Secretary under the Age Discrimination in Employment Act (Section 633(a)). The Secretary, who has primacy of enforcement right in the employees' interests is not required to seek relief for the employees through any state agency, or to wait on the state's processing of claims that the employees may have filed with the state.

In the present case plaintiff's deposition testimony indicates that the Hartford office of the Department of Labor was in communication with plaintiff concerning a meeting between plaintiff and defendant (Tr. 26–28). It appears from this—if the inference of fact is correct—that the Depart-

ment of Labor acted in the direction of informal persuasion, conference and conciliation (Section 626(b), (d)) starting in August (within sixty days after the discharge), and that the efforts continued until some time preceding March 21, 1975, when the Department of Labor advised plaintiff that, as there might be delay in certain pending settlement negotiations, plaintiff would have to submit a notice of intent to sue within 300 days after July 1, 1974, if he wished to institute a private action. The Department of Labor had in fact undertaken the task of persuasion, conciliation and conference which the notice of intention to sue is intended to afford it an opportunity to initiate. It was alert to its right to sue, and referred in its March 21st letter to its intention to submit the file to the Regional Solicitor "with a request that action be instituted against the firm." To the extent that a notice of intention to sue could serve to stimulate investigation with a view to the Secretary's commencing an action, the plaintiff's complaint of July 26th and his later communications with the Department had fully accomplished that purpose.

■ The filing of a notice of intention to sue is not required as an incantatory formality but for the definite practical purposes of inducing the Secretary to initiate conciliation and to alert him that he should consider whether to sue before the grievant himself sues. Both purposes were accomplished here; insistence on the filing of a formal notice of intention to sue would accomplish no statutory purpose and would defeat the statutory right, unless as the letter of March 21, 1975, presupposes, filing on or about April 4, 1975, would serve the occasion. Whether the 300 day provision applies depends on other considerations, but, leaving Section 633(b) aside, it is concluded that the aggregate of plaintiff's communications with the Department of Labor and of the Department's responsive actions and responses formed the full equivalent of the filing of a notice of intention to sue.

Plaintiff did not file a timely complaint with the Connecticut Commission on Human Rights and Opportunities. Plaintiff has said that he had always lived in New York (where the complaint time appears to be one year, Executive Law § 297(5) ), and that he had not heard of the Connecticut Law until the Department of Labor drew it to his attention by its letter of October 7, 1974. (No reason appears to explain why the Department does not as inflexible routine despatch a photographic copy of any complaint filed with it to the interested state agency.) Plaintiff prepared a complaint dated October 15, 1974, which the Commission says that it did not receive until November 12, 1974. The Commission's advice of November 18th that the Connecticut law

" . . . specifically does not apply to termination of employment if the employee is entitled to benefits under a bona fide retirement or pension plan"

was exactly correct: Title 31, Section 126 of the Connecticut General Statutes (C.G.S.A. § 31–126) provides with respect to the section, which embodies Connecticut's age discrimination law, that

"The provisions of this section as to age shall not apply to

(1) termination of employment where the employee is thereupon entitled to benefits under the terms or conditions of any bona fide retirement or pension plan

. . .

(2) operation of the terms and conditions of any bona fide retirement or pension . . ."

And the Connecticut Commission added that plaintiff's complaint fell outside the period in which the Commission could take complaints. Plaintiff's protest, explaining the delay, was rejected by letter of January 5, 1975, and the latter date may be taken as the approximate date of the termination of the state proceedings if they can or must be taken as "commenced" within the meaning of Section 633(b). But that becomes irrelevant.

The Connecticut statute is not the substantive equivalent of the federal statute in the case of the grievant who is involuntarily retired before normal retirement age under a preexisting pension plan. Section 31–126(1), particularly when read against Section 31–126(2), can only mean that the pension provision is a total answer to the claim of discrimination. The federal statute, Section 623(f)(2), however, provides rather that it is not unlawful for an employer

"to observe the terms of . . . any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual
. . . ."

And the Regulation, 29 CFR § 860.110 does not extend the scope of Section 623(f)(2). The present case, if not unlike *Acford v. Exxon Corp.,* D.Conn.1975, 12 F.E.P. Cases 1500, seems to fall into just the area of substantive difference between the Connecticut and the federal statutes. The difference may be difficult of practical illustration but it is clear conceptually, as appears from the contrast between *Brennan v. Taft Broadcasting Co.,* 5th Cir. 1974, 500 F.2d 212, and *McMann v. United Air Lines,* 4th Cir. 1976, 542 F.2d 217 (see particularly footnote 2).

Section 633(d) does not contemplate useless resort to state agencies which under their statutes cannot afford relief that is, it may be argued with some support in reason, available under one possible interpretation of the federal statute. So far as plaintiff is concerned, it is as if the Connecticut statute did not exist.

Since plaintiff furnished the Department of Labor with the legal equivalent of a timely notice of intention to sue, and as a matter of law had no remedy under the Connecticut statute in the light of its pension plan language, the defendant's motion to dismiss can not be granted.

It is

ORDERED that defendant's motion to dismiss the action, on the ground that the

Court lacks jurisdiction of the subject matter, is denied.