Ray MARSHALL, Secretary of Labor, United States Department of Labor, Appellant,

v.

WEST ESSEX GENERAL HOSPITAL, Joseph Loudermilk, Chester Verdi, Joseph Lipari and Harry Wexler, Appellees.

No. 77–1758.

United States Court of Appeals, Third Circuit.

Argued Feb. 14, 1978.

Decided April 28, 1978.

---

5. John W. Salmond, *The Theory of Judicial Precedents*, 16 Law Quarterly Rev. 376, 379–80 (1900).

Carin Ann Clauss, Carl W. Gerig, Jr., Lois G. Williams, U. S. Dept. of Labor, Kerry L. Adams, Washington, D.C., Francis V. La-Ruffa, New York City, for appellant.

Smith, Kramer & Morrison, David H. Posner, Newark, N.J., for appellees.

Before GIBBONS and HUNTER, Circuit Judges and WEBER,* District Judge.

## OPINION

JAMES HUNTER, III, Circuit Judge:

The Secretary of Labor filed a complaint seeking injunctive relief to restrain West Essex General Hospital and individual defendants from violating the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634. The district court dismissed the complaint on the grounds that the Secretary had failed to defer to the Division on Civil Rights of the New Jersey Department of Law and Public Safety. The Secretary appeals, and we reverse.

### I

On March 29, 1976, an area director of the Wage and Hour Division of the United States Department of Labor wrote a letter to the Division on Civil Rights of the New Jersey Department of Law and Public Safety to advise it of suspected age discrimination by West Essex General Hospital against six former employees. The letter began by stating that the Secretary, under section 14(b) of the ADEA, 29 U.S.C. § 633(b), may not file suit under section 7(b) of the Act, id. § 626(b), before expiration of sixty days after proceedings had been commenced under the state law prohibiting age discrimination, unless such proceedings had terminated earlier. It then gave "notice" to the New Jersey agency of facts uncovered during an investigation which, in the federal agency's view, constituted illegal age discrimination under federal and state law. The six employees' names, former positions in the hospital, and ages were listed, but no specific supporting facts were revealed. The letter then noted the power of certain New Jersey officials to institute suit

under the state age discrimination law, N.J. S.A. § 10:5–13, but concluded, "We wish neither to encourage nor to discourage such action on the part of the State of New Jersey." The area director ended the letter by indicating the intent of the Secretary of Labor to file a suit after sixty days, unless state proceedings had earlier terminated.

On March 31, 1976, the state Division on Civil Rights replied that since the six individuals listed in the letter had not filed state charges, the "complaints" would not be processed. The agency instead indicated that it would "defer this matter back" to the federal agency for action.[1]

On November 29 the Secretary of Labor filed suit in the District Court for the District of New Jersey. The complaint sought to enjoin defendants from violating the provisions of section 4(a) of the ADEA, 29 U.S.C. § 623(a), and of section 15 of the Fair Labor Standards Act of 1938 [FLSA], id. § 215. The complaint also requested back pay and reinstatement of individuals who were allegedly discharged or forced to resign by defendants because of their age. Jurisdiction was based on section 17 of the FLSA, id. § 217.[2] The complaint alleged that the Secretary had unsuccessfully attempted to achieve voluntary compliance through conciliation, but did not mention the contact with the New Jersey agency.

Defendants moved to dismiss the suit for lack of subject matter jurisdiction, based on the Secretary's failure to commence proceedings under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5–1 et seq.

■ After accepting affidavits from the parties, the district court granted defendant's motion to dismiss the action. The judge ruled that section 14(b) of the ADEA,

---

* Honorable Gerald J. Weber, United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The letter stated in part: ·

 Inasmuch as the six (6) persons listed in your letter have not yet filed with this Division, the Division will not process these complaints.

We will, instead, defer this matter back to you for whatever action you deem appropriate.

2. Sections 15 and 17 of the Fair Labor Standards Act of 1938 [FLSA], 29 U.S.C. §§ 215, 217 (1970), are incorporated by reference in section 7(b) of the Age Discrimination in Employment Act of 1967 [ADEA], id. § 626(b).

29 U.S.C. § 633(b),[3] as interpreted by this court in *Goger v. H. K. Porter Co.*, 492 F.2d 13 (3d Cir. 1974), requires as a jurisdictional prerequisite to a federal civil suit that state proceedings first be commenced when a state agency is authorized to enforce state age discrimination laws. Although letters had been exchanged by the federal and state agencies, the judge decided that no proceedings had been "commenced" in the meaning of the statute. He described the exchange as "no more than a pretense, a subterfuge, to circumvent the Congressional intent."[4]

On appeal the Secretary presents two arguments. First, he urges that the requirement in section 14(b), as interpreted by *Goger*, be applied only to suits by employees under the ADEA and not to suits by the Secretary for injunctive relief. Second, he contends that even if the federal agency must defer to state procedures, the exchange of letters in this case met such a requirement.

## II

Section 14 of the ADEA, 29 U.S.C. § 633, *quoted at* note 3 *supra*, sets forth the Congressional plan to reconcile the interests of the federal government and of the states in providing relief from age discrimination in employment. Section 14(b) of the Act provides, in part:

In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section [7] of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated . . ..

This court has held in suits by individuals that commencing state proceedings is a prerequisite to a civil action brought in federal district court. *Goger v. H. K. Porter Co., supra.* See *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 193–194 (3d Cir. 1977); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834, 844 (3d Cir. 1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978).

There is no question that the New Jersey Law Against Discrimination is a law pro-

---

**3.** The entirety of section 14, 29 U.S.C. § 633 (1970), is as follows:

Federal-State relationship

Federal action superseding State action

(a) Nothing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this chapter such action shall supersede any State action.

Limitation of Federal action upon commencement of State proceedings

(b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: *Provided*, That such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State law. If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority.

**4.** The district judge also indicated that he was unsure whether a "local community hospital" could fit the definition of "employer" under the ADEA. In part, "employer" is defined as "a person engaged in an industry affecting commerce." 29 U.S.C. § 630(b) (1970). Although this definition does not explicitly include hospitals as does the corresponding definition in the FLSA, *id.* § 203(s)(4), we have no doubt that a hospital can be an "employer" under the Act. Cf. e. g., *Sibley Memorial Hospital v. Wilson*, 160 U.S.App.D.C. 14, 488 F.2d 1338 (1973) (under similar definition of "employer" in Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e(b) (1970)); *Doctors Hospital, Inc. v. Recio*, 383 F.Supp. 409, 411 (D.P.R.1974) (same); *United States v. Medical Society of South Carolina,* 298 F.Supp. 145, 152 (D.S.C. 1969) (same).

hibiting age discrimination in employment or that the Division on Civil Rights of the New Jersey Department of Law and Public Safety is an agency authorized to seek relief from discriminatory practices under that statute. N.J.S.A. §§ 10:5–1 *et seq.* *See Goger v. H. K. Porter Co., supra,* 492 F.2d at 15.

The Secretary argues that the requirement in section 14(b) of initially seeking redress from the state agency before instituting suit in federal district court should be interpreted not to apply to an action by the Secretary for injunctive relief. He has brought to our attention three opinions which have addressed the application of section 14(b) to actions by the Secretary. Each indicated that the Secretary need not defer to a state agency. Two of those cases, however, were actions by the employees under the ADEA. Mention of an action by the Secretary was made in *dicta* without discussion or citation. *Cowlishaw v. Armstrong Rubber Co.,* 425 F.Supp. 802, 807 (E.D.N.Y.1977); *Vazquez v. Eastern Air Lines, Inc.,* 405 F.Supp. 1353, 1355 n. 2 (D.P.R.1975). The third case, *Dunlop v. Crown Cork & Seal Co.,* 405 F.Supp. 774 (D.Md.1976), held that the Secretary need not defer to state authorities, and alternately that the Secretary's notice to the Maryland Human Relation Commission was sufficient to comply with section 14(b) if deference were required. With regard to its first holding, the Maryland district court read the reference in section 14(b) to suits "under section [7]" to apply only to suits for damages, and not to Secretary's action for injunctive relief.

■ In this case it is unnecessary to resolve the broad question put by the Secretary. We can assume, without deciding, that the prohibitory language of section 14(b), "no suit may be brought under section [7] of this title," applies equally to suits by the Secretary and by an employee, so that under the rule of *Goger,* the Secretary

must first "commence" a state proceeding before filing suit in federal district court. We do not reach this question since the exchange of letters in this case between the Wage and Hour Division of the Department of Labor and the Division on Civil Rights of the New Jersey Department of Law and Public Safety was sufficient to satisfy any deference requirement which might exist under section 14(b).

Soon after the letter from the federal agency was received, the New Jersey agency replied by indicating that it would not proceed since the individuals mentioned in the notice had not filed complaints. It then stated that it would defer back the matter to the Secretary. Defendant has argued that the letter from the Secretary was deficient under a section 14(b) requirement, since it did not purport to be a "filing" with the state agency, and since it alleged insufficient facts to meet the filing requirement of New Jersey, N.J.S.A. § 10:5–13; *see* 29 U.S.C. § 633(b).

We need not consider defendant's contentions that the Secretary's letter to the New Jersey agency was insufficient to constitute a filing under the New Jersey Law Against Discrimination. The Division of Civil Rights did not reject the Secretary's letter on the grounds that it was a deficient filing, but on the basis that the individuals involved in the alleged discrimination had not themselves filed a complaint.

■ Even assuming that the Secretary must commence state proceedings before bringing a federal suit under section 14(b), there would be no basis in the statute for a requirement that employees file charges with a state before the Secretary can proceed. The ADEA has given the Secretary an independent role, through section 17 of the FLSA, of enforcing the public policy against age discrimination in employment.[5] *See Wirtz v. Jones,* 340 F.2d 901, 903 (5th Cir. 1965) (FLSA suit); *cf. EEOC v. North Hills Passavant Hospital,* 544 F.2d 664 (3d

---

**5.** Similarly, there is no basis in the statute for the lesser mandatory requirement that the Secretary advise employees that they should commence state proceedings, although this may be a good practice for the Department, *see, e. g., Cowlishaw v. Armstrong Rubber Co.,* 425 F.Supp. 802, 803 (E.D.N.Y.1977).

Cir. 1976) (EEOC, operating under statutory language similar to that in ADEA, may bring suit on same facts or charge involved in pending federal suit by employee). Thus, if the New Jersey agency in fact found the Secretary's notice to be deficient, the sole reason for the deficiency is one which would not block the Secretary from bringing his civil action in federal district court.

Further, we find that the letter from the New Jersey Division on Civil Rights in effect informed the Secretary that the state agency had decided not to take up its option under the ADEA of proceeding for sixty days before the filing of the Secretary's suit superseded the state action, 29 U.S.C. § 633(a). If a state decides not to proceed but instead allows the federal authorities to handle a matter, then the policy of deferring to a state under section 14(b) has been fulfilled. A state agency which defers back to the Secretary thus has terminated proceedings for purposes of section 14(b). *Cf. Love v. Pullman,* 404 U.S. 522, 524, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), (under analogous requirement in Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(b) (1970), renumbered 42 U.S.C. § 2000e–5(c) (Supp. V 1975)); *EEOC v. Raymond Metal Products Co.,* 530 F.2d 590, 597 (4th Cir. 1976) (same); *Parker v. General Telephone Co.,* 476 F.2d 595 (9th Cir. 1973) (same). Since state proceedings have terminated, even before the lapse of sixty days, the Secretary is free to file a civil action in federal district court. *See, e. g., Bonham v. Dresser Industries, Inc., supra,* 569 F.2d at 194–195.

The judgment of the district court will be reversed and this case remanded for further proceedings consistent with this opinion.

GIBBONS, Circuit Judge, concurring

I join in the opinion of the court holding that, even assuming that § 14(b) of the Age Discrimination in Employment Act of 1967 (ADEA)[1] applies to an action brought by the Secretary of Labor, there was compliance with that section here. However, I would go further than the majority's opinion and hold that § 14(b), as interpreted by this court in *Goger v. H. K. Porter Co.,* 492 F.2d 13 (3rd Cir. 1974), does not apply to enforcement actions brought by the Secretary.

There is now pending before this court in banc the case of *Holliday v. Ketchum, McLeod & Grove, Inc.,* No. 77–1978, in which we are asked to reconsider the *Goger* interpretation of § 14(b). In its amicus brief in *Holliday* the Secretary urges that even a private litigant should be permitted to file an age discrimination suit in a federal court without first resorting to state administrative or conciliatory remedies. In the instant case the Secretary contends that even if this court in *Holliday* should reaffirm *Goger's* interpretation of § 14(b), that section does not apply to his public enforcement suit. In my opinion, that contention is sound. Thus, even if there had been no exchange of correspondence between the Secretary and the state agency such as that referred to in the majority opinion, the district court still should have entertained the suit.

The court in *Goger* relied on the similarity of the language of § 14(b) and the language of § 706(c) of Title VII of the Civil Rights Act of 1964.[2] The court noted that in *Love v. Pullman,* 404 U.S. 522, 523, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), the Supreme Court had construed the latter provision to require private parties aggrieved by a Title VII violation to resort to a state conciliatory agency before filing a charge with the federal Equal Employment Opportunity Commission. The *Goger* panel held that § 14(b) should be similarly construed.

Analogizing to the Title VII area leads to a different conclusion with respect to ADEA actions brought by the Secretary. The Civil Rights Act of 1964 provided for public enforcement by the Attorney Gener-

---

1. Pub.L. No. 90–202, § 14(b), 81 Stat. 602, 607 (codified at 29 U.S.C. § 633).

2. Pub.L. No. 88–352, tit. VII, 78 Stat. 253 (codified, as amended, at 42 U.S.C. § 2000e–1 et seq.).

al.[3] Neither the Attorney General nor the EEOC is required to resort to state conciliatory agencies before commencing pattern or practice suits under Title VII of that Act.[4] When the ADEA was passed in 1967, public enforcement authority was vested not in the Attorney General but in the Secretary of Labor, who had exercised similar responsibility under the Fair Labor Standards Act (FLSA) since 1938.[5] Certainly administrative remedies for the withholding of wages due existed under state law.[6] Nevertheless, the Secretary's equitable remedy under § 17 of the FLSA never was subject to a requirement that he first resort to the state remedies. When Congress conferred on the Secretary the authority to enforce the provisions of the ADEA, it obviously intended that he have the same enforcement authority as did the Attorney General under the Civil Rights Act of 1964. The Secretary's authority to sue is conferred not in § 14 of the ADEA, but in § 7(b).[7] That latter section merely cross-references to the enforcement scheme of the FLSA. There is no evidence either in the text of the statute or in any legislative history to which we have been referred suggesting that Congress intended to read into the FLSA enforcement scheme an exhaustion requirement which never theretofore existed. I can think of no tenet of statutory interpretation which would read the exhaustion-of-state-remedies requirement of § 14(b) both into § 7(b) of the ADEA and, through the latter, into § 17 of the FLSA. Thus, even if the Secretary had made no reference to the state conciliatory agency, the district court should have heard the suit.

3. Pub.L. No. 88–352, tit. VII, § 707, 78 Stat. 261 (codified at 42 U.S.C. § 2000e–6).

4. *United States v. Masonry Contractors Ass'n,* 497 F.2d 871, 875–76 (6th Cir. 1974). Until 1972 the EEOC had no litigation authority. Section 706(d) of the Civil Rights Act of 1964 subjected the EEOC to a limited requirement that it notify a state agency of a charge made by a commissioner and afford that agency a reasonable time to act. 42 U.S.C. § 2000e–5(d). When the authority to litigate pattern or practice cases was given to the EEOC by the Equal Employment Opportunity Act of 1972, Pub.L.

No. 92–261, § 4, 86 Stat. 107 (codified at 42 U.S.C. § 2000e–5(g)), no change was made in § 706(d).

5. Act of June 25, 1938, Pub.L. No. 75–718, ch. 676, § 17, 52 Stat. 1069 (codified, as amended, at 29 U.S.C. § 217).

6. *See, e. g.,* N.J.Stat.Ann. §§ 34:11–16 and 34:11–34 et seq.

