Ray MARSHALL, Secretary of Labor,
United States Department of
Labor, Appellant,

v.

CHAMBERLAIN MANUFACTURING
CORPORATION, Appellee.

No. 78–1194.

United States Court of Appeals,
Third Circuit.

Argued June 6, 1979.

Decided June 29, 1979.

Carin Ann Clauss, Sol. of Labor, Donald S. Shire, Associate Sol., Dennis D. Clark, Kerry L. Adams (argued), Attorneys, U.S. Dept. of Labor, Washington, D. C., for appellant.

Marshall H. Harris, Regional Sol., Philadelphia, Pa., Obermayer, Rebmann, Maxwell & Hippel, Andrew S. Price (argued), H. Thomas Felix, II, Philadelphia, Pa., for appellee.

Before WEIS and GARTH, Circuit Judges, and BECHTLE,* District Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge.

An issue which has perplexed the courts since the passage of the Age Discrimination in Employment Act of 1967[1] is whether a litigant must resort to appropriate state administrative proceedings before commencing an action in federal court. In *Goger v. H. K. Porter Co.*, 492 F.2d 13 (3d Cir. 1974), we held that section 14(b) of the Act[2] imposes this obligation on a private litigant. Subsequently in *Holliday v. Ketchum, MacLeod & Grove, Inc.*, 584 F.2d 1221 (3d Cir. 1978), this court sitting *en banc* overruled *Goger*, and held that neither an individual nor the Secretary of Labor is required to resort to state age discrimination remedies as a precondition to maintaining a federal suit for age discrimination.[3] The most recent chapter in this controversy has been written by the Supreme Court: in *Oscar Mayer & Co. v. Evans*, —— U.S. ——––––, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), it

---

* Honorable Louis C. Bechtle, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. 29 U.S.C. § 621 (1976).

2. 29 U.S.C. § 633(b); *see* p. 101 *infra*.

3. 584 F.2d at 1230 (private action), 1230 n.38 (action brought by the Secretary).

held that "§ 14(b) mandates that a grievant not bring suit in federal court under § 7(c) of the ADEA until he has first resorted to appropriate state administrative proceedings."[4]

Today we are called upon to decide whether this holding should be extended to require *the Secretary*, when he brings suit under *§ 7(b)* of the ADEA, to resort first to the age discrimination remedies provided by state law. Although we tread warily in light of the Supreme Court's rejection of our interpretation of § 14(b) as it pertains to a private right of action, we conclude nonetheless that different considerations are involved when it is the government, rather than a private individual, which has brought an action to enforce the Act. We therefore hold that § 14(b) imposes no obligation on the Secretary to defer to state administrative proceedings.

I

On June 13, 1977, the Secretary brought this action in the district court, alleging that the defendant, Chamberlain Manufacturing Corporation, was violating § 4 of the Age Discrimination in Employment Act (the "ADEA")[5] and § 15 of the Fair Labor Standards Act (the "FLSA"),[6] by discharging, demoting and otherwise discriminating against its employees between the ages of forty and sixty-five. The Secretary asked that these practices be enjoined, that the victims be reinstated, and that they receive backpay.

The defendant moved for summary judgment on two grounds, alleging (1) that the Secretary did not commence proceedings before the Pennsylvania Human Relations Commission (the "PHRC"), as section 14(b) requires; and (2) that the Secretary did not seek voluntary compliance through conciliation, as 29 U.S.C. § 626(b) requires.

The district court filed an opinion and order on November 16, 1977, in which it treated the defendant's motion as a motion to dismiss for lack of subject matter jurisdiction (*see* Fed.R.Civ.P. 12(b)(1)). *Marshall v. Chamberlain Manufacturing Corp.*, 443 F.Supp. 159 (M.D.Pa.1977). Finding that it was "undisputed" that the Secretary had neither commenced proceedings before the PHRC nor even notified the PHRC that a complaint had been filed, the district court concluded that the Secretary had not complied with section 14(b). It viewed compliance with section 14(b) as a jurisdictional prerequisite for both government and private litigants,[7] and therefore entered an order dismissing the action,[8] without reaching the defendant's alternative argument that the Secretary had not complied with 29 U.S.C. § 626(d).

The Secretary has appealed from this order.

II

Section 14(b) of the ADEA provides in pertinent part:

(b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been

4. —— U.S. at ——, 99 S.Ct. at 2070.

5. 29 U.S.C. § 621 et seq.

6. 29 U.S.C. § 201 et seq.

7. The district court entered its order dismissing the complaint before this court's *en banc* decision in *Holliday v. Ketchum, MacLeod & Grove, Inc.*, 584 F.2d 1221 (3d Cir. 1978), and therefore it followed this court's prior decision in *Goger v. H. K. Porter Co.*, 492 F.2d 13 (3d Cir. 1974).

8. It is apparent that the district court erred when it dismissed the complaint. Even had it been correct in its conclusion that section 14(b) requires the Secretary to commence state proceedings before filing a complaint, it should have held the action in abeyance until the Secretary satisfied that requirement. In *Oscar Mayer*, the Supreme Court did no more than remand the case with instructions that it be held in abeyance until the plaintiff had complied with § 14(b). —— U.S. at —— & n.13, 99 S.Ct. at 2076 & n.13.

commenced under the State law, unless such proceedings have been earlier terminated . . .

29 U.S.C. § 633(b). In *Holliday v. Ketchum, MacLeod & Grove, Inc.,* 584 F.2d 1221 (3d Cir. 1978) (en banc), we held that this provision does not require "resort to state age discrimination remedies [as] a precondition to maintaining a federal suit for age discrimination." [9] In dictum, we also decided the question before us today: "*a fortiori* the Secretary of Labor need not resort to state age discrimination remedies before prosecuting charges under the ADEA." [10]

In *Oscar Mayer & Co. v. Evans,*[11] the Supreme Court rejected the *holding* in *Holliday* without reaching the issue which we had discussed in *dictum.* In the context of a private litigant's action, the Court interpreted § 14(b) as a requirement "that a grievant not bring suit in federal court under § 7(c) of the ADEA until he has first resorted to appropriate state administrative proceedings." [12] *Oscar Mayer* involved a claim for individual relief under § 7(c) of the ADEA (which pertains only to private actions), and the Court limited its inquiry to "whether § 14(b) requires an *aggrieved person* to resort to appropriate state remedies before bringing suit . . ." (emphasis added).[13] Therefore, it did not consider the issue which is before us today: whether § 14(b) imposes any precondition on the *Secretary's* right of action.

Section 14(b) applies to all suits which are brought "under section 626" and which involve employment practices "in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice . . . ."[14] The parties here do not dispute that Chamberlain's allegedly unlawful employment practices occurred in Pennsylvania, which has a statute authorizing the Pennsylvania Human Relations

Commission (the "PHRC") to grant relief to the victims of age discrimination. 43 Pa. Stat.Ann. §§ 955, 956 (Supp.1978). Like many comparable statutes in other states, the Pennsylvania statute permits only an "aggrieved" "individual," the Commission or the Commonwealth's Attorney General to file a complaint with the PHRC. 43 Pa.Stat.Ann. § 959 (Supp.1978). Although the Pennsylvania courts have not considered this issue, this restriction would appear to exclude the Secretary as an eligible complainant.

By itself, this restriction would not preclude the application of § 14(b) to suits brought by the Secretary. The proviso to § 14(b) only requires that a litigant file a written and signed statement in order to commence state administrative proceedings:

If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority.

29 U.S.C. § 633(b). Pennsylvania's requirement that the party commencing the proceeding be the "aggrieved" "individual" therefore becomes, in the terms of § 14(b), a "requirement . . . other than . . the filing of a written and signed statement . . . ." *See Oscar Mayer & Co. v. Evans,* —— U.S. ——, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979); *Marshall v. West Essex General Hospital,* 575 F.2d 1079 (3d Cir. 1978).

Therefore, if we were to decide that § 14(b) restricts the Secretary's right of action, the Secretary could comply with § 14(b) by notifying the PHRC of the al-

---

9. 584 F.2d at 1222.

10. *Id.* at 1230 n.38.

11. —— U.S. ——, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979).

12. *Id.* —— U.S. at ——, 99 S.Ct. at 2070.

13. *Id.*

14. 29 U.S.C. § 633(b).

leged age discrimination sixty days before bringing suit.[15] Therefore, restating the question presented by this appeal, it is whether § 14(b), in view of its language and the purpose and nature of the Secretary's right of action, requires the Secretary to notify the PHRC of alleged acts of age discrimination sixty days before the Secretary commences an action in federal court.[16]

### A

By its terms, § 14(b) only conditions the right to bring suit "under section 626."[17] Therefore, a threshold question is whether an enforcement action by the Secretary is a "suit . . . brought under section 626." The Secretary's right of action is authorized by § 7(b) of the ADEA, 29 U.S.C. § 626(b), which provides:

> (b) The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act

under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: . . .

> Before instituting any action under this section, the Secretary shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion.

The first two sentences of § 626(b) incorporate many of the enforcement provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 211(b), 216, 217. Indeed, § 626(b) declares that violations of the Act are to be treated as violations of the Fair Labor Standards Act, 29 U.S.C. § 215. By incorporating these provisions, the ADEA empowers the Secretary to bring enforcement actions *under the FLSA*. Although § 626(b) speaks of the Secretary "instituting [an] action under this section," the contours of the Secretary's right of action are not defined in § 626; instead, the Secretary

---

**15.** Moreover, we observe that the PHRC may take action on its own initiative if no aggrieved person has filed a complaint. 43 Pa.Stat.Ann. § 959 (Supp.1978).

**16.** An alternative method for the Secretary to comply with section 14(b) would be to defer any litigation until sixty days after an individual aggrieved by the violation of the Act has filed a complaint with the PHRC. If this requirement were imposed with the PHRC. If this requirement were imposed on the Secretary, it would condition his right to enforce the Act on the taking of affirmative steps by an aggrieved individual. This would be inconsistent with the purpose and history of the FLSA action, as we recognized in *Marshall v. West Essex General Hospital*, 575 F.2d 1079, 1083–84 (3d Cir. 1978).

Prior to 1961, the Secretary could only bring an action for monetary relief under the FLSA *with* the written permission of the aggrieved individual. In 1961, however, Congress amended section 17 of the FLSA to permit the Secretary to bring an action for an injunction or for monetary relief *without* the permission of the aggrieved employees. Congress enacted this amendment because it found that employees seldom filed charges fearing that they might be discharged. S.Rep.No.145, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Ad-

min.News p. 1658. *See Hodgson v. Wheaton Glass Co.*, 446 F.2d 527, 532 (3d Cir. 1971); *Wirtz v. Jones*, 340 F.2d 901, 903 (5th Cir. 1965). In *Marshall v. West Essex General Hospital*, we held that the Secretary is not required to defer action until an aggrieved individual files a complaint with the state agency:

> Even assuming that the Secretary must commence state proceedings before bringing a federal suit under section 14(b), there would be no basis in the statute for a requirement that employees file charges with a state before the Secretary can proceed. The ADEA has given the Secretary an independent role, through section 17 of the FLSA, of enforcing the public policy against age discrimination in employment. *See Wirtz v. Jones*, 340 F.2d 901, 903 (5th Cir. 1965) (FLSA suit); cf. *EEOC v. North Hills Passavant Hospital*, 544 F.2d 664 (3d Cir. 1976) (EEOC, operating under statutory language similar to that in ADEA, may bring suit on same facts or charge involved in pending federal suit by employee).

*Id.* at 1083–84. Nothing appears in the Supreme Court's *Oscar Mayer* opinion which would cause us to reconsider this holding.

**17.** 29 U.S.C. § 633(b).

utilizes the "powers, remedies and procedures" of the FLSA when he brings an action to enforce the ADEA. *See Lorillard v. Pons,* 434 U.S. 575, 579, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). Hence, the present action was brought under the FLSA and was not *in any real sense* brought "under section 626."

### B

Under the analysis of the ADEA adopted by the Supreme Court in *Oscar Mayer* and in *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), the derivation of the Secretary's right of action from the FLSA is of fundamental significance. In *Lorillard,* the Supreme Court observed that the ADEA's provisions were based on a number of statutes, primarily the FLSA, Title VII and the National Labor Relations Act:

> . . . [The ADEA] is something of a hybrid, reflecting, on the one hand, Congress' desire to use an existing statutory scheme and a bureaucracy with which employers and employees would be familiar and, on the other hand, its dissatisfaction with some elements of each of the preexisting schemes. Pursuant to § 7(b) of the Act, 29 U.S.C. § 626(b), violations of the ADEA generally are to be treated as violations of the FLSA. "Amounts owing . . . as a result of a violation" of the ADEA are to be treated as "unpaid minimum wages or unpaid overtime compensation" under the FLSA and the rights created by the ADEA are to be "enforced in accordance with the powers, remedies and procedures" of specified sections of the FLSA. 29 U.S.C. § 626(b). (footnotes omitted).[18]

By analogy to FLSA procedures, the Court concluded in *Lorillard* that a jury trial must be afforded to private litigants under the ADEA. In *Oscar Mayer* the Supreme Court was again called upon to define the procedures which private litigants under the ADEA must follow. It concluded that section 14(b) was based on § 706(b) of Title VII,[19] and therefore it gave that provision of the ADEA an interpretation consistent with Title VII.

Although the Supreme Court in *Oscar Mayer* did not cite to *Lorillard,* it did not overrule that case nor did it reconsider the *Lorillard* analysis of the ADEA. Hence, we must assume that *Lorillard* retains its precedential value, and our decision must be guided by the interpretation which the Supreme Court has given to the ADEA in those two cases. Read together, *Lorillard* and *Oscar Mayer* require that each element of the ADEA right of action be interpreted in light of the statute (FLSA, Title VII, etc.) from which it was derived.

Under this instruction, we can only conclude that it would not be appropriate to extend the *Oscar Mayer* rule to actions brought by the Secretary. As the Supreme Court recognized in *Lorillard,* the Secretary's right of action under the ADEA is distinct from a private right of action in both its nature and derivation:

> Following the model of the FLSA, the ADEA establishes *two primary enforcement mechanisms. Under the FLSA* provisions incorporated in § 7(b) of the ADEA, 29 U.S.C. § 626(b), *the Secretary of Labor may bring suit* on behalf of an aggrieved individual for injunctive and monetary relief. 29 U.S.C. §§ 216(c), 217 (1970 ed. and Supp. V). *The incorporated FLSA provisions together with § 7(c) of the ADEA, 29 U.S.C. § 626(c), in addition, authorize private civil actions* for "such legal or equitable relief as will effectuate

---

18. 434 U.S. at 578–79, 98 S.Ct. at 869.

19. "In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to insti-

tute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law . . . ."

42 U.S.C. § 2000e–5(c).

the purposes of" the ADEA. (footnotes omitted and emphasis supplied).[20]

We note in particular the Court's observation that the Secretary's right of action was established "[u]nder the FLSA," unlike the individual's right of action which was established under "[t]he incorporated FLSA provisions *together with.* § 7(c) of the ADEA . . . ." (emphasis supplied).[21]

The private right of action which is authorized by the ADEA is modeled on both Title VII (*see Oscar Mayer & Co. v. Evans*) and on the FLSA (*see Lorillard v. Pons*). By contrast, the Secretary's right of action was established exclusively under the FLSA. Therefore, in determining what conditions are to be imposed on the Secretary's right to bring an action to enforce the ADEA, we must look to the procedures of the FLSA.

### C

Chamberlain admits, as it must, that under the FLSA, the Secretary has no obligation to notify state agencies or to await the filing of complaints with such agencies by aggrieved individuals. Br. for Appellee at 2. Although statutes in some states provide administrative remedies for improperly withheld wages, the FLSA does not require the Secretary of Labor to resort first to those remedies.

Prior to the Supreme Court's decision in *Oscar Mayer*, several courts found this analogy to the FLSA persuasive in interpreting § 14(b) of the ADEA as imposing no obligation on the Secretary to defer to state administrative proceedings.[22] Indeed in *Reich v. Dow Badische Co.*, 575 F.2d 363, 367–68 (2d Cir. 1978), while recognizing that an individual litigant is required to resort to state remedies prior to filing a federal action, the opinion of the court stated in dictum that this limitation does not apply to actions brought by the Secretary:

20.  434 U.S. at 579, 98 S.Ct. at 869.

21.  *Id.*

22.  *See Reich v. Dow Badische Co.*, 575 F.2d 363, 367–68 (2d Cir. 1978) (dictum) *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d

Failure to meet the sixty day notice requirements of Sections 626(d) and 633(b)—and on a literal reading of the ADEA, the two notice periods could run concurrently—does not extinguish the employee's substantive right; it does terminate the individual's right to commence a private civil action in his own name, but the Secretary retains the right to sue to enforce the grievant's rights wholly without reference to the notice requirements. *Dunlop v. Crown Cork & Seal Co.*, D.Md.1976, 405 F.Supp. 774; 29 U.S.C. §§ 626(b), 216(c). The Secretary's right to sue continues until the expiration of the statute of limitations, that is, for two years at least, or, in the case of a willful violation, for three years. 29 U.S.C. §§ 626(e), 255(a).

While the majority opinion in *Marshall v. West Essex General Hospital*, 575 F.2d 1079, 1085 (3d Cir. 1978), did not find it necessary to address this issue, Judge Gibbons stated in his concurring opinion (written before our decision in *Holliday*) that he would have held that the Secretary is not required to resort to state administrative proceedings, regardless of whether that burden is imposed on a private litigant:

> There is no evidence either in the text of the [ADEA] or in any legislative history to which we have been referred suggesting that Congress intended to read into the FLSA enforcement scheme an exhaustion requirement which never theretofore existed. I can think of no tenet of statutory interpretation which would read the exhaustion-of-state-remedies requirement of § 14(b) both into § .7(b) of the ADEA and, through the latter, into § 17 of the FLSA.

In sum, the Secretary did not in any real sense bring this action "under section 626"; hence, § 14(b) is not applicable by its own

683; *Dunlop v. Crown Cork & Seal Co.*, 405 F.Supp. 774, 776 (D.Md.1976); *Cowlishaw v. Armstrong Rubber Co.*, 425 F.Supp. 802, 807 (E.D.N.Y.1977) (dictum); *Vazquez v. Eastern Air Lines, Inc.*, 405 F.Supp. 1353, 1355 n.2 (D.P.R.1975) (dictum).

terms. More significantly, under the *Lorillard—Oscar Mayer* analysis, the appropriate analogy here is to the procedure under the FLSA, which imposes no "deferral" requirement on the Secretary.

**D**

Nor would our holding be otherwise if, instead of looking to the FLSA for guidance, we concluded that Congress intended this issue to be resolved by reference to the provisions in Title VII which parallel section 14(b). For it cannot be overlooked that, at the time that the ADEA was enacted, the government agency charged with bringing actions to enforce Title VII was not required to notify or defer to state administrative agencies.

In *Oscar Mayer*, the Supreme Court gave section 14(b) an interpretation consonant with the provision in Title VII from which it was derived—section 706(b).[23] But § 706(b) is applicable only to actions brought by "the person aggrieved," not to actions brought by the government. At oral argument, the defendant contended that section 14(b) must also be read in light of § 706(c),[24] which applies to actions brought by the EEOC. It requires the EEOC to notify an appropriate state agency of any charge filed by a member of the Commission and, upon request, defer any action on the charge for sixty days.

If we were to accept this argument, we would be committing the very error of statutory construction which the Supreme Court discussed in *Oscar Mayer*. We would be relying on subsequent legislative history or developments to reach a conclusion about the intent of the draftsmen of the original statute.[25] It was not until 1972 that the EEOC was given a role in the enforcement of Title VII which was in any way comparable to the Secretary of Labor's role under the ADEA. When the ADEA was enacted in 1967—some five years before the 1972 amendments to Title VII—the EEOC was an administrative agency without litigation powers. B. Schlei & P. Grossman, *Employment Discrimination Law* 1059 (1976). The only agency then empowered to enforce Title VII in the courts was the Department of Justice.[26] In 1967, Congress considered but rejected the administrative agency model as the vehicle for enforcement of the ADEA.[27] Instead, it directed the Secretary of Labor to enforce the ADEA by bringing court actions. Therefore in 1967, the Attorney General was the only authorized agency

---

**23.** 42 U.S.C. § 2000e–5(c). In *Oscar Mayer & Co. v. Evans,* —— U.S. at ——, 99 S.Ct. at 2076, n. 11, the Supreme Court stated that "the deference to state agencies required by § 14(b) will soon become automatic," because on July 1, 1979 the EEOC will assume the Secretary of Labor's responsibilities for the administration of the ADEA. At oral argument of the present appeal, the Secretary questioned the Supreme Court's assumption that in administering the ADEA, the EEOC would follow its customary procedure under Title VII of notifying state agencies. Since the Reorganization Plan does no more than transfer responsibility for administration of the Act without altering any of its substantive or procedural provisions, it would appear that the EEOC will follow the procedures of the ADEA, rather than those set out in Title VII. *See* Reorganization Plan No. 1 of 1978, § 2, 43 Fed.Reg. 19807, 5 U.S.C.A. Appendix II (Supp.1979). The Secretary has informed us that the EEOC has not yet formulated its own interpretation of the procedures which the ADEA requires it to follow; in particular we are told that it has not determined whether it will provide any form of notification to state agencies.

**24.** "In the case of any charge filed by a member of the Commission alleging an unlawful employment practice occurring in a State or political subdivision of a State which has a State or local law prohibiting the practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, the Commission shall, before taking any action with respect to such charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days . . . unless a shorter period is requested, to act under such State or local law to remedy the practice alleged."

42 U.S.C. § 2000e–5(d).

**25.** —— U.S. at —— – ——, 99 S.Ct. at 2071–2074.

**26.** Pub.L. 88–352, § 707, 78 Stat. 261 (1964).

**27.** *Lorillard v. Pons*, 434 U.S. 575, 578, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).

which had a role under Title VII comparable to the Secretary's role under the ADEA.

We regard this sequence of events as highly significant, because the Department of Justice was never subject to the requirement of section 706(c), 42 U.S.C. § 2000e–5(d), that state agencies be given notice and an opportunity to act on the charge. *See United States v. Masonry Contractors Ass'n,* 497 F.2d 871, 875–76 (6th Cir. 1974); B. Schlei & P. Grossman, *Employment Discrimination Law* 1059 (1976). Consequently, whether Congress looked to the FLSA or to Title VII when it drafted the ADEA, it would have found no provision in either statute requiring the federal government to resort to state administrative remedies before commencing court proceedings. We find ourselves in agreement with Judge Gibbons' observation in his concurring opinion in *Marshall v. West Essex General Hospital*[28] that analogy to Title VII leads to a different result when it is the government which is bringing an action to enforce the ADEA, rather than an aggrieved individual seeking relief through a private action.[29]

### III

Having held that the Secretary's action must be reinstated, we will vacate the order of November 16, 1977, which dismissed the complaint for lack of jurisdiction, and remand for further proceedings consistent with this opinion. In so doing, we recognize that the second ground urged by Chamberlain in its motion for summary judgment has not been decided by the district court. As we noted earlier, Chamberlain also alleged that the Secretary did not comply with 29 U.S.C. § 626(b), which *inter alia* requires the Secretary to seek voluntary compliance through conciliation procedures.

The record discloses, however, that the Secretary has alleged—with supporting affidavits—that the obligation imposed by 29 U.S.C. § 626(b) has been satisfied. Obviously, in this factual posture, summary judgment would be inappropriate. Accordingly, this issue, as well as the merits of the Secretary's complaint, must be resolved in the district court.

### IV

The November 16, 1977 order of the district court dismissing the Secretary's complaint will be vacated and the case remanded for further proceedings consistent with this opinion.

28. 575 F.2d at 1084.

29. The Secretary also urges the impracticality of prior resort to the agencies of individual states when nationwide injunctive relief has been requested. Actions brought by the Secretary are more likely to be against employers with multistate operations. If section 14(b) were applicable to such actions, the Secretary would be required to file with many states' agencies, no one of which would be able to

compel the employer to afford full relief. Furthermore, the Secretary suggested at oral argument that, in view of the conciliation procedure already required under 29 U.S.C. § 626(b), imposition of an additional requirement that the dispute be submitted to state agencies would have duplicative and counterproductive results. In light of our holding, we do not find it necessary to address these concerns.