**James D. HODGSON, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**APPROVED PERSONNEL SERVICE, INC., Appellee.**

**No. 75–1158.**

United States Court of Appeals, Fourth Circuit.

Argued Aug. 22, 1975.

Decided Oct. 28, 1975.

---

16. See text at notes 10–11 *supra*.

17. See note 15 *supra*.

Jacob I. Karro, Atty., U. S. Dept. of Labor (William J. Kilberg, Solicitor of Labor, Carin Ann Clauss, Assoc. Sol., Beverley R. Worrell, Regional Sol., and Paul D. Brenner, Atty., U. S. Dept. of Justice, on brief), for appellant.

William Zuckerman, Greensboro, N. C. (Forman & Zuckerman, Greensboro, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

The Department of Labor sued Approved Personnel Service, Inc., to enjoin alleged violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* The complaint alleged that Approved Personnel Service, Inc. ("APS"), a Greensboro, North Carolina, employment agency, "has repeatedly violated, and . . . is violating . . . the Act by printing and publishing and causing to be printed and published notices and advertisements relating to classifications and referrals for employment by defendant indicating preferences, limitations, specifications, or discriminations based on age." The district court found that certain advertisements used by APS had violated the Act, but that others cited by the Department had not. Concluding that the facts of the case made it "an improper one for the issuance of an injunction," the district court denied relief, and the Department appeals. We reverse and remand with instructions.

I.

In September 1968 a Department compliance officer visited APS to investigate certain company practices involving the wage-hour statutes. A discussion between the compliance officer and the president of APS touched incidentally upon the new Age Discrimination in Employment Act and its applicability to employment agencies. Although APS's president stated he knew the Act applied

to his business, from November 1968 until October 1970, APS ran a number of advertisements soliciting job applicants using certain terms and phrases which the Department contends violate the Act. In October 1970 a compliance officer notified APS by telephone that help-wanted advertisements utilizing the term "recent college grad" were prohibited. The point was further impressed upon APS in December 1970 when another compliance officer visited the company's office and again warned that "recent grads" or similar terms could not be used. APS promised to discontinue the use of such terms.

The promise was not kept.[1] On February 8, 1972, the Area Director of the Department's Wage and Hour Division notified APS by letter that help-wanted advertisements containing such terms as "young," "boy," and "recent college graduate" violated the Act. The letter included a copy of the Department's Interpretative Bulletin No. 860 and requested some assurance from APS that it would comply with the Act. APS's president responded by letter and advised the Area Director that changes in APS's advertising would be made.

Whatever changes were made did not satisfy the Department, for in July 1972 APS was again visited by a Department compliance officer. The officer advised APS's president that because of the company's repeated violations the Department was forced to turn the matter over for litigation.

1. *See, e. g.,* Appendix Items 13, 24[b].

2. Our analysis of the district court's findings of fact and conclusions of law leads us to conclude that the following advertisements were expressly held in violation of the Act: Appendix Items 1[a]–[d]; 2[a], [c], [d]; 3[b], [c]; 4[a], [b]; 5; 6[a]; 7; 8; 13; 24[b]. The remaining advertisements apparently were found not to have violated the Act.

3. *See* Section 7(b) of the Act set forth and discussed *infra.*

4. 29 U.S.C. § 621(b) ("Congressional statement of findings and purpose").

5. A concise summary of the legislative history of the Act and the congressional intent in enacting it is set forth in *Brennan v. Ace Hardware Corp.,* 495 F.2d 368, 372–74 (8th Cir. 1974).

6. The Department's original complaint also asserted a cause of action for violation of Sec-

At trial, the district judge found that some of the challenged advertisements violated the Act, while others did not.[2] He further found that the Department had not "used proper methods of conciliation and persuasion as required by the Act."[3] The district court denied an injunction, even against future use of advertisements clearly in violation of the Act, on two grounds: "first because of the confusion caused by the Secretary himself and, second, because the defendant has ceased using the terms in its advertisements."

## II.

Congress passed the Age Discrimination Act "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment."[4] The Act was given a broad reach, and its ultimate impact upon employment practices in the United States is yet to be ascertained.[5] We are here presented with our first opportunity to study and apply the statute.

The present appeal involves alleged violations under Section 4(e) of the Act, 29 U.S.C. § 623(e), dealing with employment agency practices.[6] Section 4(e) reads:

(e) It shall be unlawful for an employer, labor organization, or employment agency to print or publish, or

tion 4(b) of the Act: "It shall be unlawful for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age." 29 U.S.C. § 623(b).

The district court ruled against the Department on this charge, finding that "[a]s to clerical positions advertised by the defendant, 10.5 percent of the people who respond are over forty years of age but they account for 14 percent of defendant's total placements. Consequently, defendant is in actual practice placing proportionately a higher percentage of those over forty who apply than those under forty who apply." Finding of Fact No. 23.

The Department does not appeal from the district court's ruling against it on this point.

cause to be printed or published, any notice or advertisement relating to employment by such an employer or membership in or any classification or referral for employment by such a labor organization, or relating to any classification or referral for employment by such an employment agency, indicating any preference, limitation, specification, or discrimination, based on age.

Section 4(e) speaks in general terms, with a breadth of purpose and design characteristic of the Act as a whole. To assist employment agencies in their efforts to comply with the Act, the Department of Labor has issued Interpretative Bulletin No. 860, 29 C.F.R. § 860. Section 860.92 of the Interpretative Bulletin provides in part:

(b) When help wanted notice or advertisements contain terms and phrases such as "age 25 to 35," "young," "boy," "girl," "college student," "recent college graduate," or others of a similar nature, such a term or phrase discriminates against the employment of older persons and will be considered in violation of the Act.

The Department has published no additional regulations or guidelines applicable to Section 4(e). As a result, the Department, employment agencies, and the courts have only the language of the Act and the Interpretative Bulletin to assist them in determining whether a help-wanted advertisement is discriminatory.

The relief sought here, an injunction against future violations of Section 4(e), is provided for in Section 7(b) of the Act, 29 U.S.C. § 626(b). In addition, Section 7(b) requires that:

Before instituting any action under this section, the Secretary shall at-

tempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion.

Only after such attempts have failed is the Secretary authorized to bring suit to compel obedience.

■ The district court felt that the Department had not made meaningful attempts to secure voluntary compliance from APS.[7] We disagree. During the four-year period covered by this litigation, the Department contacted APS at least five times. Visits, telephone calls, and correspondence by Department personnel were part of a patient but unsuccessful effort to persuade APS to obey the law.

The earnest pledges given at trial by APS's management that it would not again violate the Act, if believed, are not dispositive of the Secretary's entitlement to injunctive relief. The fact is the company did not stop its use of prohibited advertisements until after the Department had filed suit. Understandably, the Secretary has had enough of APS's promises. If APS really intends to comply with the Act, its future business conduct will in no way be inhibited by an injunction. "It is to be noted that an injunction in this type of case is not a burdensome thing; it simply requires the employer to obey the law." *Hodgson v. First Fed. Sav. & Loan Ass'n*, 455 F.2d 818, 826 (5th Cir. 1972). On these facts we hold that the Department is entitled to injunctive relief. *See, e. g., Hodgson v. Great American Discount & Credit Co.*, 336 F.Supp. 1355 (Md.Ala.1972).

---

7. Conclusion of Law No. 11 states: "Attempts by the plaintiff to get the defendant to comply with the Act tended to be confusing and arbitrary. Much of the problem here can be explained by the newness of the Act and the plaintiff's inexperience in enforcing it. The guidelines given by the plaintiff to the defendant tended to be somewhat nebulous. As a result, the Court finds that the defendant tend-

ed to become confused in its understanding of the Act."

No. 12 concludes: "While the Secretary may have made certain formalistic efforts to apprise the defendant of its violations of the Act, the Court does not believe that he used proper methods of conciliation and persuasion as required by the Act. . . . ."

### III.

■ The Department is entitled to an injunction only against future conduct which actually violates Section 4(e) of the Act. The district court found that the manner in which some terms and phrases complained of by the Department were used by APS did violate the Act, but in different contexts did not. The Department on appeal contends that *all* the advertisements brought to the attention of the district court violated the Act. The Department takes the approach that certain "trigger words" are violations of the Act *per se.* Such an approach has the virtue of simplicity and would facilitate enforcement. But we are inclined to think that the discriminatory effect of an advertisement is determined not by "trigger words" but rather by its context. Accordingly, we include an Appendix which contains every questioned advertisement. Read in context, the "trigger words" appear to us innocent in some advertisements and clearly discriminatory in others.

■ We affirm the district court in every instance where a violation was found.[8] With two general exceptions, we hold that the other advertisements cited by the Department are prohibited.

■ 1. The Department objects that the district court failed to find "junior" executive and "junior" secretary in violation of the Act.[9] Neither the statute nor the Interpretative Bulletin mentions the term. We believe that the adjective "junior" when applied to an employee's job description designates the scope of his duties and responsibilities within the employer's organization, and does not carry connotations of youth prohibited by the Act. The Department's own Dictionary of Occupational Titles uses "junior" in this sense, and not to suggest the age of the employee.[10]

■ 2. The most difficult problem presented by this appeal is the use by APS of the terms "recent college grads," "recent high school grads," and the like.[11] The record reveals and the district court correctly discerned that APS used these phrases in different contexts and for different purposes, some of which violated the Act and others which did not. The Department urges that the Act absolutely forbids the use of these words in any context and for any purpose in employment advertisements. We are persuaded that the distinction drawn by the district court, while a subtle one, is correct. The district court held:

> Defendant's use of terms such as "sharp recent grads," "recent college grads," "recent high school grads," "recent math grads," and other such broad, inclusive terms referring to recent graduates, *when simply appealing generally to all such persons to avail themselves of defendant's services did not violate the Act.* An extremely large number of graduates from various institutions enter the job market each year. They are usually inexperienced in job hunting. Defendant did not violate the Act by offering these people its services in finding employment. Therefore, it is not a violation of the Act for an employment agency to appeal to broad categories of individuals in such manner. It is not a violation of the Act for an employment agency to appeal to catego-

---

8. *See* note 2 *supra.*

9. *See* Appendix Items 10[a], 14.

10. JUNIOR EXECUTIVE (any ind.) 189.168. junior executive trainee. Acts in junior supervisory capacities, such as that of assistant department manager or organization, to learn company policies, departmental functions, jobs, and personnel functions with a view toward gaining knowledge of all phases of business. Participates in on-the-job training and classroom discussions. This job is definitely promotional with unlimited possibilities, principal requirements being based on personality, ambition, and initiative, rather than knowledge and experience in particular business.

U.S. Dept. of Labor, I Dictionary of Occupational Titles: Definitions of Titles 393 (3d ed. 1965).

11. Appendix Items 1[a]–[d]; 2[a], [c], [d]; 3[b], [c]; 4[a], [b]; 5; 6[a]; 7; 8; 11[b]; 13; 19; 20; 24; 26.

ries of people who have no prior experience in the job market when the *sole purpose of the advertisement is to merely acquaint those individuals with defendant's services.* This *one time appeal* to a category of people which would probably be composed mainly of the young does not discriminate against older individuals who, as a class, have had prior experience in the job finding process. All such appeals do is put the younger generation on a more even footing with their elders. To prevent the defendant from making such appeals would not benefit the older generation but would only penalize the younger. However, when such terminology is used in relation to a specific job, this likely would violate the Act. Most "recent graduates" are composed of young people. When the term is used with a specific job, it violates the Act since it is not merely informational to the job seeker but operates to discourage the older job hunter from seeking that particular job and denies them an *actual* job opportunity.

(Emphasis added.)

We hold that an employment agency advertisement directed to "recent graduates" as part of a broad, general invitation to a specific class of prospective customers coming into the job market at a particular time of year to use the serv-

ices it offers does not violate the Act.[12] But when these same words are used in reference to a specific employment opportunity, we think there is an implication that persons older than the normal "recent graduate" need not apply. Thus, such ads violate the Act. Acceptable advertisements of this type may emphasize the services and performance record of the agency itself, but must avoid representations of anticipated salaries as well as descriptions, general or specific, of job opportunities available to members of the class.[13]

◼ There may be other class advertisements that also escape the proscription of the Act. For example, when the Vietnam war ended it was not a violation of the Act to advertise services for "returning veterans." Perhaps presently an ad directed to "laid-off automobile workers" would not infringe, even though most of those laid off may be younger because of seniority rules. But generally an appeal to a younger class is suspect and in no event may be justified except as an infrequent effort to acquaint a class with the availability of employment service, as opposed to notice of availability of jobs restricted for that class only or preferentially.

◼ The decision below is reversed, and the case is remanded to the district court with instructions to issue an in-

---

12. We take particular note that in the past APS has published such advertisements only in the spring of the year, a time when many high school and college graduates first enter the job market and when their need for employment advice and counseling is greatest.

13. We confess to some difficulty in ascertaining from the record which "recent grad"-type advertisements were found in violation by the district court and which were not. Since the district court denied the injunction, there was no need for a precise determination. We reverse the denial of an injunction, however, and thus find it necessary to apply our standard to the various items in the Appendix.

We have earlier affirmed the district court's decision expressly finding certain Items in violation of the Act. *See* note 4 *supra.*

Items 19 and 20 cannot pass muster because the language in the advertisements indicates

that APS had specific jobs in mind and was not making the broad appeal to a class which we hold acceptable under the proper circumstances. The terms "Type 50" and "Administrative," together with statements of anticipated salaries create the impression that APS is recruiting graduates for particular jobs, and, by negative implication, older applicants likely will not receive equal consideration. Thus, the ad is discriminatory and is prohibited by the Act.

Item 24[a] suffers the same infirmity, and is a violation of the Act.

Item 26 is the sort of advertisement we find acceptable. While the statement of salary expectations causes us some concern, in its overall context the Item does not violate the Act for reasons stated in the text of the opinion.

junction in favor of the Department of Labor consistent with this opinion.[14]

*Reversed and remanded.*

## APPENDIX

The parties have stipulated that the items below are advertisements published by Approved Personnel Service, Inc., and complained of by the Department of Labor as in violation of the Age Discrimination in Employment Act of 1967 (emphasis in parties' stipulations, but *not* in original advertisements):

*1968*

Item 1 (November):

[a] Industrial Management Trainee. Prefer *recent college grad* . . . 8,400.00.

[b] Adjuster Trainee, Insurance Claims. Prefer *recent college grad* . . . 7,500.

[c] Cost Accounting Trainee, prefer *recent college grad* . . . to 9,000.

[d] Adjuster Trainee, prefer *recent college grad.* Auto expenses plus 7,500.

[e] *Returning Vets and* [f] *those unable to continue in college.* Many openings too numerous to list. To . . . 7,200.

Item 2 (December):

[a] Adjuster Trainee . . . $7,500. Fee paid. *Recent college grad.*

[b] *Returning Veterans to* . . . $9,000. Several jobs. Call or come in.

[c] Xerox Operator . . . $285.00. Fee paid. *Recent high school grad.*

[d] Industrial Tubing, some sales experience or *recent college grad* . . . $8,400.00.

*1969*

Item 3 (January):

[a] *Returning Vets and* [aa] *those unable to continue in college.* Many openings too numerous to list. To . . . $7,200.

[b] Data Processing Trainee. Prefer *recent college grad* . . . $6,900.

[c] Corporate Attorney, *1–2 years out of college* . . . $9–11,000.

[d] *Returning Servicemen:* We have several local jobs for you. Some are fee paid. $5–8,000. Call Mr. Ayers, 275–8636.

14. To assist the district court in framing the appropriate injunctive relief, and to guide the parties' future conduct, we find it necessary to determine the validity of the few remaining Items in the Appendix not disposed of thus far by this opinion.

Items 1[e], 2[b], and 3[a] and [d] all are addressed to returning military veterans and were time-related to the end of the Vietnam war. We share the district court's feeling that the purpose of the Act was not then obstructed by such advertisements. We also note that not all returning veterans are young.

Items such as 1[f], 3[aa], 11[b] are all directed at persons who cannot or do not intend to return to school or college. The obvious suggestion is that school- or college-age applicants will be given preference. The Act forbids this sort of advertisement.

The district court held that the Department had failed to establish how the term "first job" or "excellent first job" discriminates against older persons. We agree, and conclude that neither 4[c] nor 11[a] violate the Act.

In Items 10[b] and 12 the term "young executive" obviously refers to the age of the employer, and does not state an age requirement for job applicants or suggest that older persons will not be considered. Item 22's "young office group" certainly carries an implication that an older person might not fit in, but it tells the older applicant something he may want to know: that those already employed who will be his work associates are young. If

he likes "kids," he might be inclined to apply rather than deterred.

Items 17 and 23 merely state qualifications relating to personal appearance and physical characteristics which can exist in persons of any age.

The failure of the district court to hold "girl" and "career girl" in violation of the Act was error where these terms were used to describe an acceptable applicant for a particular job opportunity. The district court relied upon *Webster's Third New International Dictionary,* defining "girl" as "a single or married woman of any age." While this is a permissible definition, a complete reading of the entry reveals that qualities of youth or childhood inhere in the more preferred meanings of the word: girl— . . . 1 a: a female child . . . b: a young unmarried woman: MAIDEN . . . c: a single or married woman of any age. . . . 2a(1): a female servant: MAID . . . (2): a female employee . . . b: PROSTITUTE c: SWEETHEART . . . d: DAUGHTER . . . . . *Webster's Third New International Dictionary* at 959 (1961) (unabridged edition). We think the term "girl" as used and understood in the vernacular does carry connotations of youth, and advertisements soliciting "girls" or "career girls" for specific positions implicitly suggest that older applicants need not apply. The word "girl" is specifically mentioned in the Department's Interpretative Bulletin No. 860, *supra.*

Item 4 (February):

[a] College grads—Several excellent openings in both commerce and industry. *We prefer recent grads* or those seeking first or second job change. Fee paid. $6–10,000. Call Al Bell, Approved, 275–8636.

[b] Chemist Trainee, *prefer recent college grad.* To . . . $9,200.

[c] Office Trainee, good typing, *excellent first job.* Start to . . . $300.

Item 5 (June):

[a] Sales Trainee . . . . $7,800. *Any recent degree.* Locate in Greensboro. 25% travel.

[b] College Grads . . . . $7–10,000. Fee paid. General openings for *recent grads* in industry or commerce.

### 1970

Item 6 (August):

[a] "Math Clerk 325.00. *Recent high school grad.*"

[b] "*One Girl Office* 433.00 Fee negotiable. Double entry bookkeeping exp. Good typing required plus two years."

Item 7 (September):

[a] Claims Adjuster Trainee, *recent grad* 8,-000.00.

[b] Administrative Trainee, *Recent College Grad* . . . 8,400.00.

[c] Adjuster Trainee . . . 8,000.00. Auto furnished. Home nights. Prefer *recent college grad.* Call Mr. Ayers or Mr. Porter. Approved Personnel, 275–8636.

[d] *Recent Math Grad* 7200.00.

Item 8 (October):

[a] "Manager Trainee, 7,800.00. *Recent college grad ideal.*"

[b] "Administrative Trainee, *Recent College Grad* . . . 8,400."

[c] "Chemist, *Recent College Grad* . . . 550.00."

[d] "Math Clerk, *Recent High School Grad,* 340."

### 1971

Item 9 (May):

[a] *Career Girls*

Place your confidence in a leading clerical counselor, Loriene Kasier [, who] has placed 15 [b] *girls* in the first fourteen days of the month. You could be Sixteenth. Ten placed were fee paid by the employer. Another reason for coming to Approved. You will be glad you did.

Item 10 (June):

[a] *Junior Secretary*—$390.00. Fee Paid.
[b] *Young executive* wants us to find him an attractive decision maker with one year general office experience and a typing speed of 55. Consider business college grad with no experience. Call Loriene Kasier, Approved Personnel.

Item 11 (June):

Are You Looking For A Better Career Job Or Your [a] *First Job?*

If you can type 45 and [b] *do not plan to return to school*—we want to talk to you about a permanent job.

We believe it makes sense to put your confidence in the best. Give us a call or stop by soon.

Approved Personnel.

Item 12 (June):

Good Working Conditions—Shorthand Secretary—510.00 Fee Paid.

Help busy *young executive* run the show. Hours 9–5. Call Joy Smith.

Item 13 (September):

Service Representative—$6,000.

*Prefer recent technical school grad,* or at least 500 hours electronics in service related school. Excellent fringe package and future. Call Bill Crawford. Approved Personnel, 275–8636.

### 1972

Item 14 (January):

Text of stipulation: "Ads in Jan. contained 'Jr. Secretary,' 'Jr. Accountant,' 'Jr. Programmer,' and 'Jr. Secretary, One Year Office Experience.'"

Item 15 (February):

LORIENE KAISER PLACED 24

This is the number of *career girls* placed by Mrs. Kasier in January—and is three times as many as the average counselor places. Place your confidence in Greensboro's best clerical counselor today. You will be surprised at the difference. Approved Personnel.

Item 16 (February):

General Office
$433—Fee Paid

Must be Sharp and Attractive for this better job with good advancement potential in a growing firm. Requires two years of general office experience and the ability to type 50 and get along with other *girls.* Approved Personnel.

Item 17 (March):

SALES OPENINGS

Sales Trainee, degree, *athletically inclined* . . . . $8,200.

Item 18 (March):

### APPROVED PERSONNEL SERVICE

Where People Come First
10th Floor, Wachovia Bldg., 275–8636
*We place more career girls*
Call Loriene Kasier

| | |
|---|---|
| Market Analyst ........................ | $640 |
| Shorthand Secretary .................... | 575 |
| Keypunch, experience .................. | 450 |
| PBX Receptionist ..................... | 450 |
| Secretary ............................ | 450 |
| Dictaphone typist ..................... | 450 |

Item 19 (April):

Call Loriene Kaiser

First job ........................ $300–$350
HS grads. No experience required. Many openings now available. Type 50. *High School grads 1972 apply now.*

Item 20 (April):

Administrative—
    call Shere Sykes or Bill Crawford
*College Grads 1972* ................... $8,000
Now is the time to apply for better jobs in this area.

Item 21 (April):

Approved Personnel Service, Inc.
"Where People Come First"

* Note: Approved Personnel placed more *career girls* in Greensboro in a "better career" in 1971. Let Greensboro's best and largest staff of counselors help you in 1972.

. . . . . 10th Floor, Wachovia Bldg., 275–8636

Item 22 (May):

Bookkeeping Machine Operator ........ 500.00

Some experience on E400 preferred, but will consider any machine experience. *Young office group.* Good benefits; free parking. Fee negotiable. Call Loriene Kasier.

Item 23 (May):

### SALES

Call Bill Crawford

Hosiery—Full line—Men's and women's. Travel 3 state area. Must have hosiery sales experience ...................... 16,000.

Casualty Insurance—Ideal for individual F & C salesman desiring to enter commercial field as sharp adjuster looking toward sales .......................... 14,200.

Computer Equipt. Trainee—Must have bachelors degree and heavy work experience. Hospital administrative or sales background ideal .......................... 9,000.

Lumber Trainee—Bachelors degree and *All-American* type suits this opening to a "T" .......................... 8,100.

Item 24 (May/June):

### APPROVED PERSONNEL SERVICE

Specializing in Better Local Jobs
and Service
Greensboro's Leading Professional Agency
"Now in Our Ninth Year"
10th Floor, Wachovia Bldg. . . . 275–8636

. . . .

| | | |
|---|---|---|
| [a] | *College Grads* 1972, to | 10,000 |
| | IE Trainee, IE degree required, no exp. | 9,000 |
| | Sales Trainee, BS degree required | 8,400 |
| | Electronics Technician, military training | 7,200 |
| [b] | Civil Engineer, *sharp recent grad*, to | 9,600 |
| | Estimator Trainee, electrical | 7,200 |
| | Field Customer Service, two years college | 6,000 |

Employer Fee Paid. No Fee Unless Position Accepted.

Item 25 (June):

### BEST

Let Greensboro's best staff of personnel counselors, the agency that places more *career girls* in better jobs help you with the career position of your choice at no cost or obligation until we place you. Many of our job listings are with employers that deal with our firm exclusively and are fee paid.

Item 26 (June):

*High School Grads 1972*

Are you aware of the advantages of seeking employment assistance through a professional employment agency—especially Approved Personnel. Let one of our experienced better counselors help you with the position of your choice if you can type. We have already placed many of your classmates in fine career jobs paying to 400.00 monthly to start. You are invited to call or stop by now.