Ray MARSHALL, Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

AMERICAN MOTORS CORPORATION,
a corporation, Defendant.

No. 77–71249.

United States District Court,
E. D. Michigan, S. D.

Aug. 1, 1979.

On Motion for Clarification and
Reconsideration Sept. 20, 1979.

Allen H. Bean, U. S. Dept. of Labor, Detroit, Mich., for plaintiff.

W. Robert Chandler, Cross, Wrock, Miller & Vieson, Detroit, Mich., for defendant.

## OPINION AND ORDER

CORNELIA G. KENNEDY, Chief Judge.

Plaintiff Ray Marshall, Secretary of Labor, commenced this action on May 20, 1977, on behalf of a number of employees whom he alleges were discharged, retired, demoted, not promoted, or otherwise discriminated against by defendant in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. Plaintiff has now filed a Motion for Leave to File an Amended Complaint and a Motion for Partial Summary Judgment. Defendant has filed a Motion for Summary Judgment on the following issues: (1) Plaintiff's failure to conciliate as required by the ADEA; (2) Plaintiff's failure to file charges with the state agency at least sixty days before commencing suit; (3) The time barring of certain employees' claims; (4) The retirement of certain employees within the terms of the ADEA permitting employer discretion; and (5) Plaintiff's failure to sue the actual employer of certain employees.

*Conciliation Requirements*

The defendant asks this court to grant its motion for summary judgment on the grounds that the Secretary failed to engage in conciliation efforts as required by the Age Discrimination in Employment Act. The act provides: "Upon receiving such a charge, the Secretary shall promptly . . seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d). According to the defendant, this requirement of conciliation is jurisdictional and thus no action may be maintained without adequate efforts to achieve a solution by amicable means. Those courts which have considered the question have generally found the requirement's fulfill-

ment to be necessary to the maintenance of an action. However, they have held that dismissal is too drastic a sanction to impose for less than strict compliance with the requirement. The courts have therefore not dismissed in such a case but have granted a stay pending conciliation efforts. *See, e. g., Marshall v. Baltimore & Ohio Railroad*, 461 F.Supp. 362, 369 (D.Md.1978).

■ The parties in this matter undertook a series of discussions which extended over two years before the suit was filed. During that time there were at least five meetings between representatives of the plaintiff and defendant, on November 20, 1975, December 9, 1975, January 26, 1976, June 30, 1976, and January 17, 1977. In addition, there were a number of contacts by letter and telephone throughout the period. These meetings and discussions failed to bring about an amicable resolution of the grievances, and, as a result, the present suit was filed. According to the plaintiff, although conciliation efforts failed, the requirements of the statute were met. The Secretary states that agents of the Department of Labor informed the defendant of the nature and extent of the violations, explained the relief sought, and gave the defendant an opportunity to respond. Finally, the Secretary's agents told the defendant that the case would be reviewed for possible legal action if conciliation failed. Case law has interpreted the conciliation statute to require just these sorts of statements and actions as conciliatory efforts. *Brennan v. Ace Hardware Corp.*, 495 F.2d 368 (8th Cir. 1974); *Marshall v. Hartford Fire Ins. Co.*, 78 F.R.D. 97 (D.Conn.1978). The plaintiff contends that it was not required to negotiate individually in a pattern and practice case but could seek a blanket make-whole remedy. If the Secretary seeks only prospective relief, then a period of conciliation dedicated to generalized discriminatory practices would be adequate. In such a case the concern is with establishing non-discriminatory practices and guidelines to be applied to all employees in the future. However, if it seeks retrospective relief, such as back pay, then it follows that there must be some discussion of the merits of individual cases.

■ The Secretary states, however, that he was unable to achieve a settlement with AMC as a result of actions of the defendant which hampered the plaintiff in his negotiating efforts. According to the Secretary, AMC refused to admit that any discrimination existed or could exist and documented its position with a ten-page statistical analysis. (Benedict Affidavit ¶ 4). In addition, AMC refused to discuss the claims of those individuals which AMC considered to be barred by the statute of limitations. (Benedict Affidavit ¶ 6; Bean Affidavit ¶ 8). The plaintiff also contends that the defendant failed to supply information requested by the Secretary as necessary to its investigation. (*See generally* Bean Affidavit). The result of these actions, according to the plaintiff, was to render any settlement negotiations fruitless.

According to the defendant, conciliation efforts failed because the Secretary improperly conducted them in the following respects:

As prerequisites for conciliation discussions, the Secretary required that:

(a) AMC admit its guilt;

(b) AMC submit a blanket offer to make whole all employees within the protected age class who have been terminated, demoted or refused hire since 1970;

(c) AMC waive its rights under the statute of limitations;

(d) AMC abandon its position that the three-year limitations period applied to ADEA claims.

Defendant's Brief at 13.

It is evident from the statements of the parties that they are in substantial disagreement as to the tenor of the discussions which took place and the requirements they were to meet. It does not appear from the frequency of the parties' contacts that the discussions were clearly inadequate to meet minimum requirements of the statute. *Cf. Hodgson v. Approved Personnel Service, Inc.*, 529 F.2d 760, 764 (4th Cir. 1975). There is no requirement in the statute that

the conciliation process be in the nature of an adjudicative process, complete with a presentation of evidence and marshalling of defenses. In fact, courts have held that the Secretary is not required to continue efforts after the defendant has stated that it believes it has not been guilty of wrongdoing but may proceed to litigation to determine that issue. *See Marshall v. Hartford Fire Insurance Co.*, 78 F.R.D. 97, 105 (D.Conn. 1978). It therefore does not appear that the conciliation requirements have not been met as far as efforts to conciliate are involved. The case should proceed to trial and a presentation of the proofs on this issue.

Accordingly, the defendant's Motion for Summary Judgment on the issue of conciliation is DENIED.

*Section 4(f)(2)*

The defendant asks also for summary judgment on the claims of eighteen individuals who were retired under the terms of the Salaried Employees Retirement Pension Plan. The defendant claims that any retirements under the terms of the plan, including those at the discretion of the employer based on the employee's age, do not violate the ADEA. The defendant interprets various court decisions, and in particular *United Airlines v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), to permit such retirements if the plan was instituted before the ADEA was enacted, provides for the payment of substantial benefits, and is not a subterfuge to evade the intent of the act. In the instant case, the pension plan was established in July 1950 and provides for early retirement at the option of the corporation of employees over fifty-five years of age and with more than ten years of continuous service. According to the Hinsberg Affidavit, the retirees involved in this case received benefits in the following ranges: less than $250 a month—1; $250–$300—2; $300–$400—4; $400–$500—2; above $500—8, amounts, which the defendant believes satisfy the requirement of substantiality. Finally the defendant contends that it relied in its ac-

tions upon the interpretation of this section provided by the Department of Labor and set forth in the Code of Federal Regulations.

According to the Secretary, the actions taken by the defendant are not protected by 29 U.S.C. § 623(f)(2). That section formerly stated:

It shall not be unlawful for an employer

.  .  .

.      .      .      .      .

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual;

(3) to discharge or otherwise discipline an individual for good cause.

It was revised in 1978 to read as follows:

It shall not be unlawful for an employer

.  .  .

.      .      .      .      .

(2) to observe the terms of a bona fide seniority system [to] any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual.

The Secretary contends that the defendant's interpretation of congressional intent is incorrect. According to the Secretary, it was the intent of Congress to promote the hiring of older workers without necessarily including them in normal retirement plans established for younger workers. *See also* [1978] U.S.Code Cong. & Admin.News, pp. 504, 512. The act itself states that Congress was concerned with the problems older workers experienced in retaining and regaining employment, with the setting of

arbitrary age limits not related to job performance, and with the incidental effects of unemployment on older workers. 29 U.S.C. § 621. In the present case, the Secretary argues, the result of the defendant's actions was to force upon these workers the sorts of privations about which Congress had expressed concern. These former AMC workers who were involuntarily retired experienced loss of social security and pension benefits and were forced to seek employment elsewhere at an advanced age.

The Sixth Circuit Court of Appeals has held that although there can be more than one cause in a decision to discharge an employee, the employee is "nevertheless entitled to recover if one such factor was his age and if in fact it made a difference in determining whether he was to be retained or discharged." *Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir. 1975). More recently that court upheld a discharge pursuant to a pension plan which permitted employer discretion when the employer observed the terms of the plan, which was not a subterfuge, and when the employer acted in good faith. However, the court held that the plan satisfied the requirements and policies of the act because it required "consideration of other factors which are related to an employee's ability to perform work satisfactorily [and was thus] in harmony with the stated purpose of the Act." *Thompson v. Chrysler Corp.*, 569 F.2d 989, 993 (6th Cir. 1978); *Carpenter v. Continental Trailways*, 446 F.Supp. 70, 73–74 (E.D.Tenn.1978). The court found in *Thompson* that adequate factfinding on the pertinent issue was engaged in to satisfy the act. This interpretation obviously differs in critical aspects from that urged by defendant.

Considering the Sixth Circuit Court of Appeals' interpretation of the act, the defendant cannot argue that its decision to terminate these employees is or was in strict compliance with the ADEA. Furthermore, its statement that it acted in reliance upon *McMann* cannot support its behavior here. First, the *McMann* decision was not handed down by the Supreme Court until some time after the present litigation began and after the alleged acts

of discrimination. It therefore could provide only an after-the-fact justification at best. Furthermore, and a critical difference, the *McMann* case, unlike the present one, concerned an employee who had been retired pursuant to a plan for mandatory retirement of employees at age sixty. *McMann, supra*, at 194. Thus the employer did not exercise discretion to force the employee to retire at an age earlier than that provided for all employees in his classification under the plan.

In the present case, it cannot be argued that the retirements were taken in good faith to observe the requirements of the plan. The plan did not mandate retirement at the age at which it was taken by all but one of the employees in question. Rather the plan provided for the exercise of discretion by the employer. After the passage of the act, one element of the employer's discretion was removed. That was the right to consider age as a relevant factor in the decision to terminate an employee. Age can enter into the decision only if it is actually linked with a decline in ability which otherwise constitutes good cause to terminate the employee. The only exceptions provided for in the act are for bona fide plans which are not subterfuges to evade the purposes of the act. An interpretation of an existing plan, which allows an employer to terminate an employee solely on the basis of age rather than good cause would obviously be in direct contravention of Congress' intent in passing the ADEA. Congress intended by that act to expand, not limit the rights of older employees, and it is thus not possible to arrive at an interpretation of the act permitting the abrogation of those rights.

The defendant also asserts that it acted in reliance upon the Department of Labor's own interpretation of § 623(f)(2). The regulation provides, in part:

Thus, the Act authorizes involuntary retirement irrespective of age, provided that such retirement is pursuant to the terms of a retirement or pension plan meeting the requirements of section

4(f)(2). The fact that an employer may decide to permit certain employees to continue working beyond the age stipulated in the formal retirement program does not, in and of itself, render an otherwise bona fide plan invalid insofar as the exception provided in section 4(f)(2).

29 C.F.R. § 860.110. The regulation clearly states that any involuntary retirement must meet the requirements of § 623(f)(2). As stated above, that section's terms do not support the defendant's actions in this matter. Were the court to read into the regulation and the act a provision for the employer's exercise of unlimited discretion, exercised without regard for the purposes of the act, it would introduce an exception so broad as to swallow the rule. The Sixth Circuit Court of Appeals has stated that the act is "remedial legislation designed 'to promote employment [by] older persons based on their ability rather than age.' 29 U.S.C. § 621(b), and is entitled to a liberal construction." *Gabrielle v. Chrysler Corp.*, 573 F.2d 949, 954 (6th Cir. 1978), *vacated*, —— U.S. ——, 99 S.Ct. 2819, 61 L.Ed.2d 273 (1979). Thus, neither precedent nor the regulation reasonably suggest that the actions of the defendant comply with the ADEA.

The Secretary further asks this court to note that the recent amendment to § 623(f)(2) was given immediate effect by Congress because it was seen as merely clarifying rather than creating new standards. *See also* [1978] U.S.Code Cong. & Admin.News, pp. 504, 513. The Secretary urges that even if the amendment were seen as creating new standards, the application of the amendment in this case does not work an undue hardship because it involves not a mere private case but a matter of great national concern. Thus, the withdrawal of the right to discriminate unjustly does not work an injustice. However, the court need not go so far as to find the amendment should be applied retroactively, considering the precedent which this court is bound to follow. Now that Congress has clarified its original intention in enacting the provision, it is even more incumbent upon the court to follow compatible Sixth

Circuit precedent. *Cf. Davis v. Boy Scouts of America*, 457 F.Supp. 665, 673 (D.N.J. 1978). In this circuit's view too "forced retirement extinguishes an individual's right to employment and is thus not excused by section 4(f)(2) unless the retirement is based on some reason other than age, such as disability or poor performance." [1978] U.S.Code Cong. & Admin. News, pp. 504, 513.

Accordingly, the defendant's Motion for Summary Judgment on the forced retirement of its employees is DENIED.

*Deferral to the State*

■ The defendant argues that before the Secretary could proceed in Federal Court, he was required to meet a jurisdictional requirement that he file a grievance with the State of Michigan sixty days before filing the present suit. The ADEA provides:

In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under State law, unless such proceedings have been earlier terminated.

29 U.S.C. § 633(b).

Michigan has such a law and state authority, which do not appear to preclude such resort by the Secretary, Mich.Comp.L.Ann. §§ 37.2101–37.2804. According to the Secretary, this section is not jurisdictional, even if it may be so applied to private actions. Suits by the Secretary are encouraged, *Dean v. American Security Insurance Co.*, 559 F.2d 1036, 1038 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978), and the plaintiff suggests, therefore, that it was not the intent of Congress to require the Secretary to submit to state authority when bringing a pattern and practice suit. Finally, the Secretary urges, it was the intent of Congress

to give the Secretary the same right of direct action as given the Attorney General under Title VII.

In its report issued with the recent revision to the act, the Senate committee stated that the provision did not require individuals to seek relief from the state before they could proceed in a federal forum. [1978] U.S.Code Cong. & Admin.News, pp. 504, 508–509. Indeed, in construing the provision, the Third Circuit Court of Appeals noted that it was anomalous to accord deference to state proceedings when a federal right was sought to be vindicated. *Holliday v. Ketchum, MacLeod & Grove, Inc.*, 584 F.2d 1221, 1230 (3d Cir. 1978); *Gabrielle v. Chrysler Corp.*, 573 F.2d 949 (6th Cir. 1978), vacated, —— U.S. ——, 99 S.Ct. 2819, 61 L.Ed.2d 273 (1979). However, the Supreme Court has more recently held that at least in the case of individual suits brought under the ADEA, a charge must be first filed with a state meeting the requirements of § 633(b). *Oscar Meyer & Co. v. Evans,* —— U.S. ——, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). In that decision, the Court held that the requirement is met by merely filing a charge, commencing state proceedings, whether or not such a charge is within the time limits set by state law. In the *Evans* case, the Court then required a sixty day stay of proceedings following the commencement of state proceedings.

Although the decision in *Evans* clarifies the requirements of individual suits, it does not clearly apply to suits brought by the Secretary. The Supreme Court has stated that the ADEA provides for two enforcement mechanisms: suits brought by the Secretary on behalf of an individual and suits similar to those provided in §§ 16, 17 of the Fair Labor Standards Act. (29 U.S.C. §§ 216, 217); *Lorillard v. Pons,* 434 U.S. 575, 579, 98 S.Ct. 866 (1978); *Marshall v. Goodyear Tire & Rubber Co.,* 554 F.2d 730, 731 n.1 (5th Cir. 1977). The Supreme Court in *Evans* held that the enforcement mechanism in § 4(b) of the ADEA was similar to that of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(d). It has been held under Title VII that in a class action suit, which is similar to the sort of

case filed here, not every member of the class must file a charge. *See, e. g., Gill v. Monroe County Department of Social Services,* 79 F.R.D. 316, 331 (W.D.N.Y.1978), vacated on other grounds, 547 F.2d 31 (2d Cir. 1976). Indeed, the Sixth Circuit Court of Appeals has held that the Attorney General is not required to file any charge with the state in order to commence a civil proceeding. *United States v. Masonry Contractors Ass'n.,* 497 F.2d 871, 876 (6th Cir. 1974).

In order to determine the question of whether the Secretary is required to file a charge with the state, it is necessary to consider the act as a whole and the act as interpreted by the Supreme Court in past cases. Section 633(b) is very clear and inclusive. It states that no suit can be brought under § 626 unless a charge is first filed with the state. The Third Circuit Court of Appeals recently held when considering this issue that the Secretary brings his suit under the FLSA, not under § 626. Thus § 633(b) can impose no requirement of filing a charge. *Marshall v. Chamberlain Manufacturing Corp.,* 601 F.2d 100 (3d Cir. 1979). However, such an argument is ingenuous and does not reflect the language of the act. For example, § 626(b) states: "Before instituting any action under the section, the Secretary shall . . . ." Other parts of that section further limit or define the role the Secretary is to play. Thus, it is not possible to exempt the Secretary from the requirement on the grounds that he does not bring actions under § 626. Furthermore, the ADEA gives the Secretary the power "to cooperate with . . . State . . . agencies . . . to aid in effectuating the purposes of this chapter." 29 U.S.C. § 625(b).

There are, however, good and sufficient reasons to conclude that no filing is required of the Secretary. First, it is clear that the Secretary is not in the same situation as other litigants under the ADEA. Suits brought by the Secretary supersede those of private litigants. § 626(c)(1); *Reich v. Dow Badische Co.,* 575 F.2d 363, 368 (2d Cir. 1978). The act also provides a role for the Secretary which is the equiva-

lent of that played by most state agencies, and it is not logical to conclude that Congress determined duplication of effort was advisable. Furthermore, many pattern and practice suits brought by the Secretary, such as the present one, will involve employees who reside in many states. In such a case, the purposes of the act would best be served by maintaining the integrity of the class in order to eradicate the entire problem.

More important, though, is the interpretation of the ADEA provision in light of Supreme Court interpretation of other parts of the ADEA. In *Lorillard v. Pons*, 434 U.S. 575, 579, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), the Supreme Court stated that the ADEA follows the enforcement mechanism of the FLSA. As noted above, the Court in *Evans* stated that the deferral mechanism is modeled after Title VII. It thus follows that the method followed under one or the other of those two acts must indicate whether deferral here is necessary. It appears that much of § 626, and § 626(c)(1) in particular, tracks the FLSA, specifically § 216. It is clear that there is no deferral requirement under the FLSA.

Analogy to Title VII provides the same conclusion.

> Neither the Attorney General nor the EEOC is required to resort to state conciliatory agencies before commencing pattern or practice suits under Title VII of that Act. When the ADEA was passed in 1967, public enforcement authority was vested not in the Attorney General but in the Secretary of Labor, who had exercised similar responsibility under the Fair Labor Standards Act (FLSA) since 1938.

*Marshall v. West Essex General Hospital*, 575 F.2d 1079, 1084–85 (3d Cir. 1978) (Gibbons, J., concurring). In the Reorganization Plan No. 1 of 1978 § 2, [1978] U.S.Code Cong. & Admin.News, p. 9799, all relevant functions of the Secretary of Labor with regard to the ADEA were transferred to the Equal Employment Opportunity Commission. Section 5 of that plan further provided: "Any function of the Equal Employment Opportunity Commission concerning initiation of litigation with respect to State or local government . . . are hereby transferred to the Attorney General." In explaining the purpose of the reorganization, President Carter stated: "The Justice Department and the EEOC will cooperate so that the Department sues on valid referrals, as well as on its own 'pattern and practice' cases." [1978] U.S.Code Cong. & Admin.News, pp. 9795, 9798. Nevertheless, whether the suit is brought by the Attorney General or the EEOC, *see United States v. Board of Education of Garfield Heights*, 581 F.2d 791 (6th Cir. 1978), there is no deferral requirement for pattern and practice cases under Title VII. Considering that the same conclusion is reached either under Title VII or the FLSA, both of which were models for the ADEA and closely allied, it is not logical to impose such a requirement in this case. The Secretary may, however, choose to exercise his discretion and file a charge with the State of Michigan as a precaution.

Accordingly, the defendant's Motion for Summary Judgment on the grounds that the Secretary failed to file a grievance with a state agency is DENIED.

*Statute of Limitations*

The defendant in its motion for summary judgment contends that the statute of limitations applies to bar a number of the claimed acts of discrimination. It asks the court to dismiss those claims which allege violations before May 20, 1974, as barred by the three year statute of limitations, 29 U.S.C. §§ 255(a), 626(e)(1). The defendant further asks that claims which arose before May 20, 1975 be dismissed as barred by the two year statute of limitations, since the alleged violations were not willful. The question of the defendant's willfulness is an issue of fact which must be determined after a weighing of the facts and is thus not appropriately decided on a motion for summary judgment. *Marshall v. Hills Brothers*, 432 F.Supp. 1320, 1322 (N.D.Cal.1977).

The limitation in § 255 is a procedural limitation barring the remedy but not

the right and must therefore, as it is here, be pleaded as an affirmative defense. *Mumbower v. Callicott*, 526 F.2d 1183, 1187 n.5 (8th Cir. 1975); *Hodgson v. Humphries*, 454 F.2d 1279, 1283 (10th Cir. 1972). In an appropriate case, a court might find that some equitable consideration, such as estoppel, applies to prevent the defendant's asserting the statute of limitations as a defense. *Ott v. Midland-Ross Corp.*, 600 F.2d 24 (6th Cir. 1979); *cf. Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir. 1978). However, after careful review of the affidavits, etc., it appears there are no facts in this case which would permit a finding that estoppel could be appropriately applied. Viewing the affidavits in the light most favorable to plaintiffs and drawing all inferences in his favor there is no indication that the plaintiff relied upon any act of the defendant in allowing the statute to run. The plaintiff asked the defendant to agree to a tolling of the statute, and the defendant plainly did not concur. Thus the Secretary cannot claim he was misled. Estoppel therefore cannot bar the assertion of the statute of limitations as a defense. The ADEA, as amended April 6, 1978, now provides for a tolling of the statute during conciliation for a period of one year. § 626(e)(2). However, Congress provided in enacting the amendment that the tolling was to affect only conciliation efforts commenced after the enactment. Act of April 6, 1978, Pub.L. No. 95–256, § 4(c)(2). Thus there is no statutory tolling provision upon which the Secretary can rely to prevent the bar of those claims which arose before May 20, 1974.

■ Plaintiff urges that the court extended the statute of limitations through a finding that a continuing violation has occurred. This argument has been rejected by the Sixth Circuit Court of Appeals in analogous Title VII cases. In *Krzyzewski v. Metropolitan Government*, 584 F.2d 802, 805 (6th Cir. 1978) it held that the date on which an employee knows or should know that the employer has made a final decision to terminate him or her is the date upon which the violation occurs. Although the victim may continue to feel the effect of the illegal act, the question is whether any present violation exists. *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). In a recent age discrimination case, the Sixth Circuit found that a seniority system which is discriminatory as to age may be a continuing violation as long as it is maintained. However, the employee's cause of action accrues at the time his employment opportunities are adversely affected by the application of the seniority system to him. *Morelock v. NCR*, 586 F.2d 1096 (6th Cir. 1978). Therefore, although some effects may still exist as the result of discriminatory discharges or demotions, if there is a reasonably ascertainable date on which the act occurred, that is the day on which the statute began to run. Therefore, any illegal acts which resulted in termination, demotion, or a failure to promote must have occurred after May 20, 1974, in order to avoid the application of the statute.

■ The plaintiffs urge yet another theory for this court's finding the statute of limitations inapplicable to claims of illegal acts occurring before May 20, 1974. The applicable statute of limitations, found in the Portal-to-Portal Act provides that it applies to actions for unpaid minimum wages, unpaid overtime compensation, or liquidated damages. 29 U.S.C. § 255. Based on this language, the plaintiff concedes that actions for these sorts of damages are barred for some of the claimed violations. However, it believes that it may still assert claims on behalf of these people for other sorts of relief. The ADEA provides for broad ranging legal and equitable relief to promote its policies. These remedies include equitable relief, such as reinstatement and promotion. § 626(b). It can be argued that these sorts of remedies may be of peculiar aid in promoting the purpose of the ADEA to preserve employment and prevent deterioration of skill and morale among older workers. § 621.

No statute of limitations expressly applies to equitable relief, particularly that which is prospective in application. *Hodg-*

son v. *Approved Personnel Service, Inc.*, 529 F.2d 760, 765 (4th Cir. 1975). The enforcement provision of the ADEA merely states that "the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation . . . ." § 626(b); *see Gifford v. Diagnostics*, 456 F.Supp. 462, 464 (N.D.Ohio 1978); *cf. Franks v. Bowman Transportation Co.*, 424 U.S. 747, 770–75, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 733 (5th Cir. 1977). Indeed it can be argued that some sort of monetary damages which reflects the amount of wrongdoing should be included in a remedy in order to deter more certainly illegal employment practices and to recompense victims of discrimination. *Rodriguez v. Taylor*, 569 F.2d 1231, 1237 (3d Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). An appropriately fashioned remedy which includes either reinstatement or promotion as part of its prospective relief may ensure greater compliance than a simple order mandating compliance with the act. For this reason, it is argued, it may best accord with justice for the court not to dismiss those parties whose claims are time barred until the time has come to fashion a remedy.

It is true that evidence of illegal employment practices present in the cases of those individuals whose claims are time barred may be relevant to those claims which are not barred. The defendant's actions vis-a-vis those employees may constitute relevant background evidence of violations. *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). The courts have held that discriminatory intent as to one individual may be inferred from a totality of the circumstances, including actions taken by the defendant in other cases. *Laugesen v. Anaconda Co.*, 510 F.2d 307, 314 (6th Cir. 1975); *Carpenter v. Continental Trailways*, 446 F.Supp. 70, 73–74 (E.D. Tenn.1978); *Marshall v. Hills Brothers*, 432 F.Supp. 1320, 1325 (N.D.Cal.1977). The Secretary's suit alleges a pattern and practice of discrimination on the basis of age, and he must therefore prove a systemwide pattern which has existed and which continues. *Teamsters v. United States*, 431 U.S. 324, 338, 97 S.Ct. 1932, 52 L.Ed.2d 396 (1977). Indeed, providing the names to the defendant gives it notice of the specific claims which it will have to meet at trial. However, although these proofs of discriminatory acts may be relevant to the Secretary's case and may affect the remedy fashioned, it must be found that the claims of employees discriminated against within the meaning of the ADEA are time barred if the act occurred before May 20, 1974. There is no evidence Congress intended there to be no end to employer liability. Thus the statute must apply to bar these claims.

Accordingly, the defendant's motion to dismiss certain employees is GRANTED as to those employees as to which the claimed discriminatory act occurred before May 20, 1974.

### *Employees Employed by American Motors Sales Corporation*

AMC contends in its written motions that the court should dismiss those individuals who were not employed by it but by American Motors Sales Corporation, a wholly owned subsidiary of AMC. The plaintiff filed a motion to amend its complaint to add AMSC as a party defendant. At oral argument defendant withdrew its motion and acquiesced in the granting of the plaintiff's motion to amend.

Accordingly, the plaintiff's motion to add AMSC as a party defendant is GRANTED as long as to the employees whose claims are not barred by the statute of limitations requirements as decided in the other motions. The defendant's motion to dismiss the employees is DENIED.

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLARIFICATION, DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION, AND STRIKING AFFIRMATIVE DEFENSE

▮ Plaintiff filed this Motion for Reconsideration and Clarification on various

points of the Court's opinion and order filed August 1, 1979. The plaintiff first urges the court to reconsider its decision that prospective equitable relief is barred by the statute of limitations provided in 29 U.S.C. § 255(a). According to the plaintiff no statute expressly bars such relief, thus laches rather than a statute of limitations should be applied. Under this interpretation, the defendant would be required to demonstrate the inequity of having to defend itself as a result of unreasonable delay and prejudice. This would be a more flexible bar than any statute of limitations. No case discussing this issue in the context of the ADEA has been presented to the court by either party, nor has the court been able to find any authority on the question.

As stated in the Court's opinion and order, interpretations of Title VII of the Civil Rights Act has often been useful in guiding courts faced with analogous questions under the ADEA. Recent Title VII cases in this circuit have held that equitable prospective relief is barred by untimely filing of a claim. The Sixth Circuit Court of Appeals recently held that an action alleging a violation of Title VII based on a 1970 job reclassification was barred by the untimely filing of the Title VII charge. *Trabucco v. Delta Airlines*, 590 F.2d 315 (6th Cir. 1979). Similarly, the District Court for the Southern District of Ohio held that two devices may be used to extend the time limit: the concepts of continuing violation and tolling. Neither was applicable in that case, however, to prevent the dismissal of a case involving a challenge to a seniority system. *Furr v. Trans World Airlines*, 461 F.Supp. 58, 58 (S.D. Ohio 1978).

The United States Supreme Court has also denied prospective equitable relief on the grounds that the cause of action was barred by the statute of limitations in *United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). In that case, the Court stated that such a result was mandated by the intent of Congress in enacting the act. "A contrary view would substitute a claim for seniority credit for almost every claim which is barred by limitations. Such a result would contravene the mandate of § 703(h)." *Id.* at 560, 97 S.Ct. at 1890. There is no reason to believe that the intent of Title VII would be abridged by such an application of the statute of limitations of congressionally created rights while that of the ADEA would be furthered. Indeed, the Portal-to-Portal Act strongly supports the application of the statute of limitations to such equitable relief. It was the action of courts in applying the act in cases not contemplated by Congress, thus creating liability where none had existed, which led to its enactment. The act very clearly states an intent to provide a uniform period to promote "the sound and orderly conduct of business and industry." § 251(a). The limitations statute itself states very clearly that "every . . . action shall be forever barred unless commenced" within the limitations period. § 255(a).

Accordingly, the plaintiff's motion for reconsideration of the opinion rendered on the application of the statute of limitations to prospective equitable relief is denied.

■ The plaintiff also has asked for a clarification of the court's opinion on the application of the statute of limitations to demotions and failures to promote. The plaintiff states that the court's opinion was too broad in finding that the statute applied to bar relief for those people with claims arising before May 20, 1974. In addition, it is urged, broader factual questions apply to such claims, which must be determined at trial. The plaintiff's contention on both points is correct and not at variance with the court's opinion. In that opinion, the court discussed various factors such as the concept of *continuing violation* which apply particularly to claims of discrimination in failure to promote. *See generally Shehadeh v. Chesapeake & Potomac Tel. Co.*, 193 U.S.App.D.C. 326, 339–340, 595 F.2d 711, 724–25 (1978). As stated in the court's opinion, "the employee's cause of action accrues at the time his employment opportunities are adversely affected," citing *Morelock v. NCR*, 586 F.2d 1096 (6th Cir. 1978). They are not thus subject to dismissal for

failure to comply with the statute of limitations in the same manner as terminations, since facts concerning the application and effects of the actions must be adduced.

The plaintiff has also asked the court to enter an order granting summary judgment in its favor on the question of deferral to the state. In its opinion and order, the court denied the defendant's motion for summary judgment on that question. It appears to the court that the plaintiff's request is more appropriately treated under F.R.Civ.P. 12(f). In light of the court's decision denying the defendant's motion for summary judgment on the issue, it is ordered that any defense based on a failure to comply with jurisdictional prerequisites of deferral to the state is properly struck.

Accordingly, IT IS ORDERED that the defendant's Sixth affirmative defense of failure to comply with § 14(b) of the ADEA be struck.